Linda T. BORJAS, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellee.

No. 00CA0964.

Colorado Court of Appeals, Div. III.

Sept. 13, 2001.

The Hoover Law Firm, David S. Hoover, Lakewood, CO; The Law Firm of Jennifer E. Bisset, Jennifer Bisset, Denver, CO, for Plaintiff–Appellant.

Bostrom Sands & Sander, P.C., Jon F. Sands, Denver, CO, for Defendant–Appellee.

Opinion by Judge NIETO.

In this action for uninsured motorist insurance benefits, plaintiff, Linda T. Borjas, appeals a judgment entered pursuant to C.R.C.P. 12(b)(5) dismissing her claims against defendant, State Farm Mutual Automobile Insurance Company (State Farm). We reverse and remand for further proceedings.

Plaintiff was injured in an automobile accident. A police vehicle driven by an Alamosa police officer responding to an emergency struck her vehicle. Plaintiff initially sued the officer and his employer, the City of Alamosa, in a separate action. The trial court dismissed that action under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, finding that those defendants were entitled to immunity under the Colorado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S.2000.

Plaintiff then brought this action against her automobile insurance carrier, State Farm, for compensation under the uninsured motorist (UM) provisions of her insurance

policy. The trial court dismissed the action under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief may be granted. The trial court found that plaintiff's insurance policy excluded UM protection under these circumstances and that the exclusion did not violate public policy.

Plaintiff's insurance policy provided UM coverage as follows: "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle." State Farm asserted, and the trial court agreed, that coverage was not provided here because the police officer and the city were immune from liability under the CGIA, and therefore plaintiff was not legally entitled to collect damages from them.

## I.

Plaintiff contends that State Farm's interpretation of the insurance policy violates public policy because § 10–4–609, C.R.S.2000, must be construed to require UM insurance coverage when the driver who has caused the insured's damage is immune from liability because of the CGIA. We agree.

A provision in an insurance contract that dilutes, conditions, or unduly limits coverages mandated by statute violates public policy and may be declared void and unenforceable. *DeHerrera v. Sentry Insurance Company*, No. 99SC379, 30 P.3d 167 (Colo. 2001); *Cruz v. Farmers Insurance Exchange*, 12 P.3d 307 (Colo.App.2000). Courts have a heightened responsibility to scrutinize insurance policy provisions that unduly compromise the insured's interest. *Huizar v. Allstate Insurance Co.*, 952 P.2d 342 (Colo. 1998).

Section 10–4–609(1)(a), C.R.S.2000, requires that, unless rejected by the insured, automobile liability insurance policies must provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom."

When the General Assembly first mandated UM coverage in 1965, the declared purpose of the legislation was as follows:

Declaration of purpose. The general assembly is acutely aware of the toll in human suffering and loss of life, limb, and property caused by negligence in the operation of motor vehicles in our state.... [T]he general assembly is also very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible. In prescribing the sanctions and requirements of this act, it is the policy of this state ... to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists.

Colo. Sess. Laws 1965, ch. 91 at 333.

That declaration of public policy "expresses the legislature's prime concern as being the need to compensate the innocent driver for injuries received at the hands of one from whom damages cannot be recovered." *Farmers Insurance Exchange v. McDermott*, 34 Colo.App. 305, 308–09, 527 P.2d 918, 920 (1974).

The supreme court has frequently commented on the purpose of § 10–4–609.

The purpose of the UM statute is to ensure that individuals injured in an accident will be compensated for their losses even if the other motorist is uninsured. *See Huizar*, 952 P.2d at 345; *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 168 (Colo.1993)("[T]he legislative intent behind the statute is to compensate innocent insureds for loss caused by financially irresponsible motorists."). The legislative purpose is satisfied when an insurance policy provides coverage for injury caused by an uninsured motorist to the same extent as for injury caused by an insured motorist. *See Terranova [v. State Farm Mutual Automobile Insurance, Co.*, 800 P.2d 58, 60 (Colo.1990) ] *Briggs [v. American Family Mutual Insurance Co.*, 833 P.2d 859, 861 (Colo.App.1992)].

*Peterman v. State Farm Mutual Automobile Insurance Co.*, 961 P.2d 487, 492 (Colo.1998).

■ From these various expressions of purpose, we perceive that the public policy of Colorado requires that insurance coverage be available to protect motorists from losses caused by other negligent drivers who cannot or will not pay for the damages they have caused. It is entirely consistent· with this public policy to construe § 10–4–609 to require that UM insurance coverage apply even though the tortfeasor is immune from liability under the CGIA. Negligent drivers and their employers who are immune from liability under the CGIA may not be financially irresponsible in the sense that they lack the ability to pay, but from the perspective of the injured innocent driver, the lack of legal responsibility has the same effect.

■ State Farm argues that plaintiff is not "legally entitled to recover damages" from a tortfeasor who is immune from liability under the CGIA and therefore, § 10–4–609 does not require coverage. The question whether § 10–4–609 requires coverage when an injured motorist cannot collect damages from a negligent motorist because the tortfeasor is immune from liability pursuant to the CGIA is an issue of first impression in Colorado. We conclude that the interpretation of the statute urged by State Farm would be inconsistent with the public policy expressed therein.

UM insurance coverage has been found in other situations where the innocent driver was not "legally entitled to recover damages." In *Farmers Insurance Exchange v. McDermott, supra*, a division of this court held that UM insurance coverage was required by the statute when the identity of a negligent hit-and-run driver could not be ascertained. Clearly, the innocent driver was not "legally entitled to recover damages" when he or she could not serve process on the unidentified tortfeasor.

Nor does bankruptcy of the tortfeasor preclude UM insurance coverage, even though the innocent driver could not legally recover damages from the bankrupt driver. *Wilkinson v. Vigilant Insurance Co.*, 236 Ga. 456, 224 S.E.2d 167 (1976). The Georgia UM insurance statute, Ga.Code Ann. § 33–7–11 (2000), applied in *Wilkinson* is similar to § 10–4–609.

Courts in other jurisdictions that have addressed the issue of UM insurance coverage where the tortfeasor is protected from liability by some form of governmental immunity have reached divergent results.

In some jurisdictions, courts interpreting statutes similar to § 10–4–609 have held that UM coverage applies when the insured is injured by a driver who is exempt from liability by some form of governmental immunity. *See Watkins v. United States*, 462 F.Supp. 980 (S.D.Ga.1977)(under Georgia law similar to § 10–4–609, although the tortfeasor was immune under Federal Drivers Act, UM insurance coverage applied where the insured was legally entitled to recover but for a legal bar to recovery that was unrelated to the facts of the traffic accident); *State Farm Automobile Insurance Co. v. Baldwin*, 470 So.2d 1230 (Ala.1985)(under Alabama statute substantially similar to § 10–4–609, insured was legally entitled to recover damages under an UM policy even though recovery from the tortfeasor was barred by governmental immunity); *Karlson v. Oklahoma City*, 711 P.2d 72 (Okla.1985)(UM coverage was extended to insured for excess damages where city's liability was limited by Oklahoma law; the court held that "legally entitled to recover" means that insured must establish only fault of tortfeasor giving rise to damages and extent of those damages); *see also Michigan Millers Mutual Insurance Co. v. Bourke*, 607 So.2d 418 (Fla.1992); *West American Insurance Co. v. Popa*, 108 Md. App. 73, 670 A.2d 1021 (1996), aff'd. 352 Md. 455, 723 A.2d, 1 (1998); *Williams v. Holsclaw*, 128 N.C.App. 205, 495 S.E.2d 166 (1998); *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Co.*, 746 A.2d 1118 (Pa.Super.Ct.1999)(*petition for appeal granted* Jan. 3, 2001).

In other jurisdictions, courts have held that their UM statutes do not mandate coverage where the tortfeasor enjoys governmental immunity. *See Coleman v. American Manufacturers Mutual Insurance Co.*, 930 F.Supp. 252 (N.D.Miss.1995)(applying Mississippi law); *Losiniecki v. American States Insurance Co.*, 610 N.E.2d 878 (Ind.Ct.App. 1993); *Surface v. American Spirit Insurance Co.*, 154 Or.App. 696, 962 P.2d 717 (1998)(*pe-*

*tition for review granted* Apr. 29, 1999); *Sayan v. United Services Automobile Ass'n,* 43 Wash.App. 148, 716 P.2d 895 (1986).

The courts that have held that UM coverage was mandated where the tortfeasor is protected by some form of governmental immunity have all found that interpretation consistent with the purposes of their UM statutes, i.e., to provide that motorists may purchase insurance to protect themselves from negligent motorists who cannot or will not pay for the damages they have caused. The UM statutes discussed in these cases all have language similar to § 10–4–609. Thus, we find the holdings in these cases consistent with the purpose of § 10–4–609 described above.

The contrary line of cases all give a strict interpretation to the statutory language "legally entitled to recover" that we find inconsistent with the public policy expressed in § 10–4–609. If we were to follow that line of cases, members of the public would be deprived of the opportunity to protect themselves from loss under the circumstances presented here, a result not intended by the General Assembly.

Further support for providing coverage is found in 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 7.14, at 388–90 (2d ed.2001), which sets forth several reasons why the tortfeasor's immunity should not preclude a UM claim: (1) while tort immunity protects the tortfeasor as intended, it should have no effect on an insurance company providing first party UM insurance coverage; (2) it is consistent with the strong public policy of providing insurance coverage to protect drivers when no compensation is available from the negligent tortfeasor; and (3) tort immunities are personal to the tortfeasor and therefore cannot be raised by an insurer.

We also note that our conclusion, while consistent with public policy expressed in § 10–4–609, does not adversely affect the public policy expressed in the CGIA. Those persons and entities who are immune from liability under the CGIA are unaffected by this holding. However, those who are disadvantaged by the CGIA can protect themselves by purchasing UM insurance. Thus, both public policies are served.

■ Accordingly, we conclude that the phrase "legally entitled to recover damages," as used in § 10–4–609, means that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages. *See Karlson v. Oklahoma City, supra.* We further conclude that the public policy expressed in § 10–4–609 requires that UM insurance policies must provide coverage for the protection of a motorist injured by the negligence of a driver who is immune from liability under the CGIA.

State Farm also argues that this holding shifts the burden of the CGIA to insurers. We do not agree.

It is the public policy of this state that all motor vehicle liability insurance policies must provide uninsured motorist coverage unless it is rejected by the insured. Section 10–4–609. State Farm is in the business of providing automobile liability insurance and therefore must offer such coverage. Our holding does not require State Farm to absorb the burdens created by the CGIA. Rather, it requires State Farm to offer to sell insurance to protect drivers from the burdens imposed by the CGIA.

## II.

■ Having held that § 10–4–609 mandates coverage where the tortfeasor is protected by the CGIA, we now turn to the issue of whether the following provision in the State Farm policy nonetheless excludes coverage: "[a]n uninsured motor vehicle does not include a land motor vehicle ... owned by any government or any of its political subdivisions or agencies." We conclude that coverage is not excluded.

■ Section 10–4–609(1)(a) provides that, unless rejected by the insured, coverage must be included in all motor vehicle liability policies to provide "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles*." (emphasis added) The term "uninsured motor vehicles" is not further defined in the stat-

**1270**

ute. Section 10–4–609(1)(a) does not specifically provide for the exclusion of government-owned vehicles or for exclusion of any other vehicles based on the ownership of the tortfeasor's vehicle. Thus, the statute mandates coverage without regard to who owns the tortfeasor's vehicle, and it does not authorize a limitation on coverage based on the ownership of the tortfeasor's vehicle. While insurers may exclude or limit liability coverage so long as public policy is not violated, provisions attempting to limit coverage required by statute are void. *Truck Insurance Exchange v. Home Insurance Co.*, 841 P.2d 354 (Colo.App.1992). Because we find the exclusion of coverage for accidents involving government-owned vehicles is not authorized by § 10–4–609, and because of our conclusion in Part I concerning the public policy expressed in § 10–4–609, we conclude that this limitation is void and unenforceable.

This also is an issue of first impression in Colorado, but the majority of courts in other jurisdictions that have considered the validity of exclusions for government-owned vehicles have found them to be void and unenforceable as contrary to their respective UM insurance laws. *Cropper v. State Farm Mutual Automobile Insurance Co.*, 671 A.2d 423 (Del.Super.Ct.1995)(construing a Delaware statute very similar to § 10–4–609 and citing authority from twelve jurisdictions), *aff'd*, 676 A.2d 907 (Del.1995); *see also* 1 Widiss, *supra*, § 8.8.

The court in *Cropper* held that the Delaware UM insurance statute provides for insurance coverage to give the insured "self protection as though the tortfeasor carried the same liability coverage as that carried by the insured." *Cropper v. State Farm Mutual Automobile Insurance Co.*, *supra*, 671 A.2d at 426 (quoting *Brown v. Comegys*, 500 A.2d 611, 613 (Del.Super.Ct.1985)). The court then found that reducing this benefit by excluding coverage for accidents involving government-owned vehicles was repugnant to the public policy of protecting persons injured in automobile accidents. We agree with this rationale.

The judgment dismissing plaintiff's claims against State Farm is reversed, and the case is remanded for further proceedings on those claims.

Judge NEY and Judge MARQUEZ, concur.