Steven PHAM, as personal representative of the Estate of Louis Diep Pham; Kinh B. Pham and La T. Bui, natural parents of Louis Diep Pham, deceased; Khanh B. Pham; Bang Le; Minh N. Ha; Vu D. Nguyen; and Kieu T. Thi–Do, Plaintiffs–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and Liberty Mutual Insurance Company, Defendants–Appellees.

No. 01CA1965.

Colorado Court of Appeals, Div. I.

Jan. 2, 2003.

Rehearing Denied Jan. 30, 2003.

Law Firm of William Muhr, Willam W. Muhr, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Seaman and Giometti, P.C., Thomas J. Seaman, Karl A. Chambers, Denver, Colorado, for Defendant–Appellee, State Farm Mutual Automobile Insurance Company.

Lasater & Allen, P.C., Edward Allen, Deana M. Hartley, Littleton, Colorado, for Defendant–Appellee Liberty Mutual Insurance Company.

Opinion by Judge GRAHAM.

Plaintiffs, Khanh Ba Pham, Bang Le, Minh N. Ha, Vu D. Nguyen, Kieu T. Thi–Do, Steven Pham, as personal representative of the estate of Louis Diep Pham, and Kinh B. Pham and La T. Bui, as natural parents of Louis Diep Pham, deceased, appeal the trial court's partial summary judgment in favor of defendants, State Farm Mutual Automobile Insurance Company and Liberty Mutual Insurance Company. We affirm.

In 1995, Erwin Ovidid Guerra drove his vehicle through a traffic signal and collided with a motor vehicle driven by Louis Diep

Pham. The individual plaintiffs, who were passengers in the Pham vehicle, were all injured. Louis Pham died from his injuries a few months later. At the time of the accident, Guerra was legally intoxicated. Guerra pleaded guilty to vehicular manslaughter, and his liability has never been disputed.

Guerra had an automobile insurance policy issued by Allstate Insurance Company with limits of $25,000 per person and $50,000 per accident. The Pham vehicle was owned by Pham Enterprises, Inc. and was insured by State Farm with policy limits of $100,000 per person and $300,000 per accident. This policy provided underinsured motorist (UIM) coverage for the passengers and for Pham's parents' wrongful death claims. Khan Pham, Louis Pham, and Ming N. Ha were also insured under other State Farm policies. Vu Duy Nguyen and his wife, Kieu Trang Thi-Do, were insured under a Liberty policy.

In 1996, plaintiffs sued Guerra, claiming that he was negligent. They also asserted claims against a bar where Guerra had consumed alcohol; Guerra's employer, under a theory of respondeat superior; and State Farm for willful and wanton breach of the UIM contract and breach of the implied covenant of good faith and fair dealing. These particular claims against the bar, the employer, and State Farm were eventually dismissed.

Hartford Fire Insurance, the employer's insurer, who provided liability coverage of $1,000,000 under a business automobile policy, denied Guerra's demand for coverage.

Before trial, Allstate settled plaintiffs' claims against Guerra for its full policy limit of $50,000. Plaintiffs notified defendants that Allstate had tendered $50,000, and each insurer consented to the settlement with Allstate. The settlement was distributed as follows: $25,000 to Louis Pham's parents and $5,000 to each of the five passengers.

After the Allstate policy proceeds had been paid to plaintiffs, a stipulated confessed judgment was entered in the amount of $1,558,707.78 in favor of plaintiffs and against Guerra. Plaintiffs agreed that if Guerra stipulated to judgment, they would not execute judgment against him, but instead would sue Hartford for payment of the unsatisfied judgment. This arrangement is known as a "Bashor agreement." *See Bashor v. Northland Ins. Co.*, 29 Colo.App. 81, 480 P.2d 864 (1970), *aff'd*, 177 Colo. 463, 494 P.2d 1292 (1972).

Plaintiffs again demanded UIM benefits from State Farm and Liberty, contending that because Hartford denied coverage to plaintiffs, the only applicable liability policy was Allstate, which rendered Guerra underinsured because of its minimal policy limits. Plaintiffs argued that when settlement was reached with Allstate, and a final judgment was entered against Guerra, defendants were obligated to pay UIM benefits to its insureds for the difference between the limits of defendants' UIM coverage and the amount Allstate paid plaintiffs. Defendants denied plaintiffs' demand for payment of UIM benefits based on their understanding that plaintiffs were going to proceed against Hartford for payment of the unsatisfied judgment entered against Guerra.

In August 1998, plaintiffs filed a bad faith breach of contract action against Hartford in federal district court. Plaintiffs argued that, because Guerra was in the course and scope of his employment and was acting in furtherance of the business and personal affairs of his employer at the time of the accident, Hartford owed Guerra a duty to indemnify him. That case is still pending.

In December 1998, plaintiffs filed the underlying complaint against defendants seeking payment of UIM benefits under their insurance policies. In October 1999, plaintiffs then amended their complaint to include actions for bad faith breach and willful and wanton breach of the insurance contracts based on defendants' failure to pay UIM benefits to their insureds once settlement was reached with Allstate and judgment was entered against Guerra.

The trial court granted defendants' motions for partial summary judgment on the tortious breach of contract claims, dismissing the two claims without prejudice. Plaintiffs appealed the judgment, but a division of this court issued an order to show cause why the appeal should not be dismissed for lack of a final appealable order. Plaintiffs then pro-

vided an order certifying the partial summary judgment as final pursuant to C.R.C.P. 54(b), and this court allowed the appeal to proceed.

## I.

We first address State Farm's contention that the trial court erred in certifying the partial summary judgment as final pursuant to C.R.C.P. 54(b). We are not persuaded.

Generally, an entire case must be resolved by a final judgment before an appeal can be brought. Section 13–4–102(1), C.R.S. 2002. A final judgment "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *D.H. v. People,* 192 Colo. 542, 544, 561 P.2d 5, 6 (1977); *accord Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982).

However, C.R.C.P. 54(b) creates an exception to the general requirement that an entire case be resolved by a final judgment before an appeal is brought. As relevant here, C.R.C.P. 54(b) provides that:

When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In deciding whether to issue a C.R.C.P. 54(b) certification for a decision disposing of less than all the claims in an action, the trial court must engage in a three-step analysis. *See Harding Glass Co. v. Jones, supra.* The first two steps are reviewed de novo, but the last step is reviewed for an abuse of discretion. *Harding Glass Co. v. Jones, supra.*

First, the trial court must find that the decision is a ruling upon an entire claim for relief. *See Harding Glass Co. v. Jones, supra.* "Claims for relief" are multiple claims in which there is more than one possible recovery and in which a judgment en-

tered on one of the claims would not bar judgment on the other claims. *Georgian Health Ctr., Inc. v. Colonial Painting, Inc.,* 738 P.2d 809 (Colo.App.1987).

Claims for bad faith breach and willful and wanton breach of an insurance contract sound in tort. *Daugherty v. Allstate Ins. Co.,* 55 P.3d 224 (Colo.App.2002). These claims exist independently of the liability imposed by an insurance contract. *Daugherty v. Allstate Ins. Co., supra; Flickinger v. Ninth Dist. Prod. Credit Ass'n,* 824 P.2d 19 (Colo.App.1991).

Here, because the tortious breach of contract claims are independent of the claims under the insurance policies, the ruling on the tort claims does not bar judgment on the claims under the policies. Thus, the certified partial summary judgment is a ruling upon entire claims for relief.

Second, the decision must be an ultimate disposition of an individual claim. *See Harding Glass Co. v. Jones, supra.* State Farm argues that the trial court's partial summary judgment order is not an ultimate disposition of the claims because they were dismissed without prejudice. We disagree.

Generally, a trial court's dismissal of an action without prejudice does not constitute a final judgment for purposes of appeal. However, such a dismissal is considered final and appealable if further action by the plaintiff would be barred by the statute of limitations *UIH–SFCC Holdings, L.P. v. Brigato,* 51 P.3d 1076 (Colo.App.2002).

Claims for bad faith breach and willful and wanton breach of an insurance contract are governed by a two-year statute of limitations. Section 13–80–102, C.R.S.2002. The action accrues on the date on which both the injury and its cause are known or should have been known through the exercise of reasonable diligence. Section 13–80–108, C.R.S.2002; *Daugherty v. Allstate Ins. Co., supra.*

Here, plaintiffs assert that the tortious breach of contract claims accrued in 1998 when defendants failed to pay UIM benefits after Allstate "paid its policy limits of $50,000 to Plaintiffs and judgment was entered against Guerra." Accordingly, future claims

for tortious breach of the insurance contracts would be barred now by the two-year statute of limitations. Thus, the partial summary judgment order is an ultimate disposition of the tortious breach of contract claims.

■ Finally, the trial court must decide whether there is just reason for delay in entering a final judgment on the claim. *Harding Glass Co. v. Jones, supra*. The trial court must consider the interests of judicial administration and the equities involved. *Lytle v. Kite*, 728 P.2d 305 (Colo.1986).

Here, because we determined that the tortious breach of contract claims are separate from the claims asserted under the insurance policies, the interrelationship of the claims does not hinder judicial administration by creating piecemeal appeals. *See Lytle v. Kite, supra*. Thus, the trial court did not abuse its discretion in determining that there was no just reason to delay C.R.C.P. 54(b) certification.

Accordingly, this appeal is from a final judgment, and we therefore address the merits of plaintiffs' arguments.

## II.

Plaintiffs contend that the trial court improperly dismissed their claims for bad faith breach and willful and wanton breach of the insurance contract. We disagree.

We review an order granting summary judgment de novo. *Serna v. Kingston Enters.*, 72 P.3d 376, 2002 WL 31119924 (Colo. App. No. 01CA0537, Sept. 26, 2002). Summary judgment is only appropriate if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Serna v. Kingston Enters., supra; Daugherty v. Allstate Ins. Co., supra*. In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Casebolt v. Cowan*, 829 P.2d 352 (Colo.1992).

Because the material facts in this case are not in dispute, we can resolve this appeal as a matter of law. *See Serna v. Kingston Enters., supra*.

■ To establish the tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness. *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545 (Colo. 1997); *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222 (Colo.App.2000). Bad faith breach of an insurance contract encompasses the entire course of conduct and is cumulative. *Dale v. Guar. Nat'l Ins. Co., supra*.

■ A willful and wanton breach is a refusal to pay insurance benefits when due and is established when an insurer acts without justification and in disregard of the plaintiff's rights. *Dale v. Guar. Nat'l Ins. Co., supra; Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550 (Colo.App.1998).

■ The determination of whether an insurer has in bad faith or willfully and wantonly breached its duties to an insured is one of reasonableness under the circumstances. *Surdyka v. DeWitt*, 784 P.2d 819 (Colo.App. 1989). In other words, " 'would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.' " *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo.1984)(quoting *Anderson v. Cont'l Ins. Co.*, 85 Wis.2d 675, 688, 271 N.W.2d 368, 375 (1978)). It is the insured's burden to establish the insurer's knowledge or reckless disregard of the fact that a valid claim has been submitted. *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559 (Colo.App.1991).

■■ It is reasonable for an insurer to challenge claims that are fairly debatable. *Brennan v. Farmers Alliance Mut. Ins. Co., supra*. If an insurer does not know that its denial of a claim is unreasonable and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo.1985); *Brennan v. Farmers Alliance Mut. Ins. Co., supra*.

Here, defendants denied UIM benefits based on their understanding that, under § 10–4–609(5), C.R.S.2002, the Hartford suit must be resolved before they can determine how much, if any, UIM benefits they owe plaintiffs. Whether this is a correct interpretation of the statute is not before us today; rather the issue before us is whether defendants had a reasonable belief that they were not obligated to pay UIM benefits during the pendency of the Hartford case. Again, we are not determining whether plaintiffs are in fact entitled to UIM benefits.

The principal source of controversy between the parties stems from § 10–4–609(5). An insurer's obligation to provide UIM benefits is limited by § 10–4–609(5):

> The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:
>
> (a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
>
> (b) The amount of damages sustained, but not recovered.

Defendants have similar policy provisions limiting UIM liability. The State Farm policy provides, in pertinent part:

> 3. The most we will pay under this coverage will be the lesser of:
>
> a. the difference between the limits of liability of this coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
>
> b. the amount of damages sustained, but not recovered.

The Liberty policy provides, in pertinent part:

> B. The limit of liability shall be reduced by all sums:
>
> 1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.

■ No Colorado cases address facts identical to those here. However, there is case law holding that, pursuant to § 10–4–609(5), until recovery is made from the at-

fault party, the actual amount of coverage to which an insured is entitled under UIM coverage is unknown. *Freeman v. State Farm Mut. Auto. Ins. Co.*, 946 P.2d 584 (Colo.App. 1997); *State Farm Mut. Auto. Ins. Co. v. Bencomo*, 873 P.2d 47 (Colo.App.1994). The statute permits the UIM insurer to aggregate and set off all insurance amounts *paid by all parties* who are legally liable for the injury sustained. *Carlisle v. Farmers Ins. Exch.*, 946 P.2d 555 (Colo.App.1997); *see* § 2–4–102, C.R.S.2002. Thus, § 10–4–609(5) applies to the *total amount received by the insured*. *Farmers Ins. Exch. v. Star*, 952 P.2d 809 (Colo.App.1997).

■ Here, defendants, relying on the cases above, argue that their UIM exposure cannot be ascertained until the total amount paid to plaintiffs by "any person or organization who may be held legally liable" is determined. Defendants further contend that the total amount cannot be determined until the Hartford suit is resolved, because Hartford may be found liable. If Hartford is found liable and ordered to pay the unsatisfied judgment entered against Guerra, defendants will not have to pay any UIM benefits because their UIM liability is limited to the difference between the amount plaintiffs receive from Guerra's liability insurers and the UIM policy limits. Defendants do not refute that they may have to pay UIM benefits if Hartford is not found liable; they simply contend that, until the Hartford case is resolved, their obligation to pay UIM benefits remains unknown and unliquidated under § 10–4–609(5).

The coverage issues are complicated and debatable, and the facts do not place the claim squarely within the statute or the respective insurance policies. Furthermore, there is no case law directly on point. Defendants' reliance on the plain language of § 10–4–609(5) and existing case law was reasonable, and, until the statute is further interpreted by the trial court, defendants have no obligation to pay UIM benefits to plaintiffs. *See Brennan v. Farmers Alliance Mut. Ins. Co., supra.* Thus, the uncertainty concerning defendants' liability to pay UIM benefits compels the conclusion that they did not act in bad faith or willfully and wantonly

by declining to pay benefits before the resolution of the Hartford case.

We also reject plaintiffs' contention that defendants should pay the UIM policy limits and then seek subrogation from Hartford if they are later held liable. Insurers are not obligated to pay UIM benefits and then seek recovery from the liable party or his insurer under a right of subrogation. *Freeman v. State Farm Mut. Auto. Ins. Co., supra.*

### III.

Defendants also contend that they were not liable to pay UIM benefits because plaintiffs' damages were not determined through arbitration or litigation, but rather through a stipulated confessed judgment. Because this issue does not affect the resolution of this appeal, we decline to address it.

Judgment affirmed.

Judge MARQUEZ and Judge PIERCE * concur.