**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSEPH H. ZBEGNER,

        Plaintiff-Appellant,

v.

ALLIED PROPERTY AND
CASUALTY INSURANCE
COMPANY, an Iowa corporation,

        Defendant-Appellee.

No. 10-1421
(D.C. No. 1:09-CV-02872-BNB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **ANDERSON**, and **HOLMES**, Circuit Judges.

---

Plaintiff Joseph H. Zbegner appeals from a district court order dismissing

without prejudice his claims against Allied Property and Casualty Insurance Co.

(Allied) as not ripe for adjudication. Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.

Zbegner was in an automobile accident in Boulder, Colorado, on June 15, 2007. At that time he had an automobile insurance policy with Allied, which included underinsured motorist (UIM) coverage. In his complaint against Allied, Zbegner alleged that he suffered severe injuries as a result of the accident and sustained damages exceeding $150,000. He claimed Jesse Hanson was the person at fault in the accident, but Hanson was underinsured, having only $25,000 in liability coverage with Allstate Insurance Company (Allstate). Allstate paid Zbegner $351.74 for property damage and offered him $2,145.00 to settle his injury claim. Zbegner did not accept Allstate's offer and has not resolved his claim against Hanson.

According to his complaint, Zbegner provided Allied with information regarding his injuries and damages and offered to settle his claim for policy limits UIM benefits. After Allied declined, Zbegner filed this action. His complaint included claims for breach of contract, breach of the duty of good faith and fair dealing, and violation of Colo. Rev. Stat. § 10-3-1115, which provides that an insurer shall not unreasonably delay or deny payment of a claim.

Allied moved to dismiss Zbegner's claims under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction). Allied asserted it could not know the amount due Zbegner for UIM benefits until he had resolved his claim against Allstate,

Hanson's insurer. Because his claims were contingent on a future event, Allied

contended they were not ripe for adjudication.

The district court[1] granted Allied's motion, citing the Colorado Court of

Appeals' decision in *Freeman v. State Farm Mutual Automobile Insurance Co.*,

946 P.2d 584 (Colo. App. 1997). *Freeman* held:

> Once recovery is made from the tortfeasor, the insured may collect an additional amount necessary to compensate the insured for injuries sustained, up to his or her UIM policy limits. In fact, until a recovery is made from the at-fault party, the actual amount of coverage to which an insured is entitled under an UIM policy cannot be known.

*Id.* at 585-86. Applying this holding, the district court assessed whether

Zbegner's claim for UIM benefits was ripe. It considered the fitness of the claim

for judicial resolution and the hardship to the parties of withholding judicial

consideration. It concluded:

> Whether, and how much, the plaintiff may recover from Allstate is completely contingent at this time; a recovery against Allstate and its amount are future events that may not occur as anticipated or may not occur at all; and the actual amount of coverage to which the plaintiff may be entitled under his Allied underinsured motorist policy cannot be known until the claim against the tortfeasor is resolved.

Aplee. Supp. App. at 64-65. In addition, it concluded, Zbegner had not alleged

undue hardship as a result of withholding judicial consideration of his UIM claim

---

[1]     The order was issued by a magistrate judge who, with the consent of the parties, was assigned to decide the case under 28 U.S.C. § 636(c)(1).

until he had resolved his claim against the tortfeasor. It its words, "plaintiff's claims stemming from an underinsured motorist insurance policy are not ripe for determination until the plaintiff either obtains judgment against or enters into a good faith settlement with the underinsured tortfeasor." *Id.* at 58. It dismissed Zbegner's claims without prejudice. Zbegner filed a timely notice of appeal.[2] He contends that the district court misconstrued Colorado law in its ripeness analysis.

## II.

"Ripeness doctrine is rooted both in the jurisdictional requirement that Article III courts hear only 'cases and controversies' and in prudential considerations limiting [the court's] jurisdiction." *Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1173 (10th Cir.), *cert. denied*, No. 11-50, 2011 WL 4533416 (U.S. Oct. 3, 2011). Allied did not argue, and the district court did not find, that Zbegner's claims failed to satisfy the case and controversy requirement. The district court's analysis concerned prudential ripeness, which is a question of timing intended to discourage the premature adjudication of abstract

---

[2] The order dismissing Zbegner's claims without prejudice was entered on August 18, 2010, and he filed his notice of appeal on September 13, 2010. Although the district court did not enter judgment in a separate document, and the judgment therefore did not become final until 150 days after entry of the dismissal order, *see* Fed. R. Civ. P. 58(c)(2)(B), Zbegner's notice of appeal was nonetheless valid, *see Constien v. United States*, 628 F.3d 1207, 1211 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2884 (2011).

disagreements. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). "In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form." *Id.* (quotations omitted); *see also Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (holding ripeness issue focuses on "whether the harm asserted has matured sufficiently to warrant judicial intervention" (quotation omitted)). Courts apply a two-factor ripeness analysis, initially considering "whether an issue is fit for judicial review." *New Mexicans for Bill Richardson*, 64 F.3d at 1499. At this first step, "the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quotation omitted). The second prong of the ripeness analysis considers "the hardship to the parties of withholding court consideration." *Morgan*, 365 F.3d at 890 (quotation omitted). "This court reviews de novo the district court's order of dismissal premised on lack of ripeness." *Alto Eldorado P'ship*, 634 F.3d at 1173.

## A.

The district court decided the claims were not ripe under Colorado law. It relied on *Freeman*, in which the court held that, "until a recovery is made from the at-fault party, the actual amount of coverage to which an insured is entitled

-5-

under an UIM policy cannot be known." 946 P.2d at 585-86. Zbegner argues *Freeman* is distinguishable because his policy with Allied does not contain the same language as the Freeman policy. The State Farm policy in *Freeman* provided, "*There is no [UIM] coverage until* the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgments or settlements." *Id.* at 585 (emphasis added, all-caps omitted). State Farm relied on this policy language in refusing to arbitrate a claim for UIM coverage because its insured had not yet resolved his claim against the tortfeasor. *Id.* In response, Freeman sought a judgment declaring State Farm was required to arbitrate his UIM claim. The Colorado Court of Appeals held that, because the amount of UIM coverage remains unknown until a recovery is obtained from the tortfeasor, State Farm could, without violating public policy, require its insured to obtain judgment or settlement from the underinsured driver as a precondition to his claim for UIM benefits. *Id.* at 586.

Although the Allied policy does not include the same language as the State Farm policy, *Freeman* is, nevertheless, on point because the *Freeman* court's holding did not rely solely on the policy language. The court also construed the following statutory definition of the maximum liability under UIM coverage:

The maximum liability of the insurer under the uninsured[3] motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

Colo. Rev. Stat. § 10-4-609(5).[4]  The court held, "The plain language of *both* the statute and the policy limits the insurer's liability to providing UIM coverage to an amount equal to the gap between the amount an insured receives from an underinsured driver and the insured's UIM policy limits."  946 P.2d at 585 (emphasis added); *see also State Farm Mut. Auto. Ins. Co. v. Tye*, 931 P.2d 540, 543 (Colo. App. 1996) ("According to the plain language of § 10-4-609(5)(a), [the insured] is entitled to underinsured motorist compensation up to the difference between the amount paid by the [tortfeasor's] insurer and the underinsured motorist policy limit." (citation omitted)).  It was on this basis the

---

[3]      Although this statutory section refers only to uninsured motorist coverage, it applies as well to *under*insured motorist coverage.  *See Farmers Ins. Exch. v. Star*, 952 P.2d 809, 812 (Colo. App. 1997) ("[Section] 10-4-609(5) articulates the maximum liability of the insurer with respect to both uninsured and underinsured motorist coverage."); *see also* Colo. Rev. Stat. § 10-4-609(4) (2007) ("Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.").

[4]      While the court in *Freeman* construed the 1994 version of § 10-4-609(5), the language of that section remained unchanged in 2007.

*Freeman* court held that the amount of UIM coverage cannot be determined until recovery is made from the tortfeasor. *See* 946 P.2d at 585-86.

Under Colorado law, the terms of § 10-4-609(5) were incorporated into Allied's policy. *See Claire v. State Farm Mut. Auto. Ins. Co.*, 973 P.2d 686, 689 (Colo. App. 1998) ("Section 10-4-609 is incorporated into every contract of automobile insurance issued in Colorado . . . .").[5] Consequently, the holding in *Freeman* is applicable to Allied's policy and Zbegner's claim for UIM benefits.

**B.**

Allied argues its policy language also supports the district court's conclusion that Zbegner's claim is not ripe.[6] It cites the following language, which falls under the heading "Uninsured Motorist Coverage – Limit of

---

[5]     Section 10-4-609(5) was repealed effective January 1, 2008, but it was in effect on the date of Zbegner's accident and during the applicable Allied policy period. *See Snell v. Progressive Preferred Ins. Co.*, No. 09CA0923, 2010 WL 2853754, at *1 (Colo. App. July 22, 2010) (noting amendments to § 10-4-609 applied to policies issued or renewed on or after effective date of act); *cf. Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996) (holding earlier amendment to § 10-4-609 not applicable to policy issued and accident occurring before effective date of amendment).

[6]     Zbegner notes Allied did not make this contention in the district court, but he does not develop an argument for waiver. While we generally do not consider issues raised for the first time on appeal, the rule "loses its force where a new ground or reason for affirming a lower court ruling is advanced as opposed to a new basis for reversing a lower court." *Stahmann Farms, Inc. v. United States*, 624 F.2d 958, 961 (10th Cir. 1980). And this court is "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Lott*, 310 F.3d 1231, 1242 n.7 (10th Cir. 2002) (quotation omitted).

Liability": "Any amount otherwise payable for damages under this coverage shall be reduced by all sums . . . [p]aid because of bodily injury by or on behalf of persons or organizations who may be legally responsible." Aplee. Supp. App. at 50.[7] Allied contends under this provision the amount Allied owes for UIM benefits depends on the amount Zbegner recovers from the tortfeasor. Thus, according to Allied, this language limits Zbegner's UIM coverage to the same extent and in the same manner as § 10-4-609(5).

Zbegner asserts a contrary view, writing: "[T]he provision means that, in the event someone else has paid [Zbegner] some damages for his injuries, that amount can be subtracted from what Allied pays [Zbegner]." Aplt. Reply Br. at 2. Thus, while he seems to concede that Allied's policy calls for a reduction in his UIM benefits based on the amount he recovers from the tortfeasor, he contends a deduction is applicable only if and when he chooses to pursue such a recovery. He maintains, "[I]f no other person or organization has paid [him] for his damages, Allied must." *Id.*

Most of the courts considering the language found in Allied's policy have construed the phrase "any amount otherwise payable for damages under this coverage" to refer to the UIM policy limit. Those courts have thus held that this policy language, like § 10-4-609(5), calls for reducing the UIM coverage limit by

_____

[7] This policy reference to uninsured motorist coverage appears to encompass underinsured motorist coverage as well. The parties do not argue otherwise.

the amount paid by the tortfeasor. *See, e.g., Hopkins v. Am. Econ. Ins. Co.*, 896 S.W.2d 933, 936-37 (Mo. Ct. App. 1995); *Mead v. Aetna Cas. & Sur. Co.*, 509 N.W.2d 789, 790-91 (Mich. Ct. App. 1993) (per curiam); *Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162, 164 (Ind. 1992); *Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d 115, 116-17 (N.D. 1991); *Kahn v. Aetna Cas. & Sur. Co.*, 542 N.E.2d 878, 879-80 (Ill. App. Ct. 1989).

Other courts have held this policy language calls for reducing the amount of the insured's damages, rather than the coverage limit, by the amount he has already recovered from the tortfeasor. *See, e.g., Penn. Gen. Ins. Co. v. Cantley*, 615 A.2d 477, 480 (R.I. 1992) (per curiam). Notably, however, no courts considering the language found in Allied's policy have construed it as Zbegner urges: permitting him to forgo a recovery from the tortfeasor altogether. We reject his argument.

The meaning of the policy language cited by Allied is consistent with § 10-4-609(5), as that provision was construed in *Freeman*. To conclude otherwise would create a conflict between the Allied policy and § 10-4-609(5), which was incorporated into the terms of the policy, *see Claire*, 973 P.2d at 689; *see also State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1260 (Colo. 2003) (en banc) (holding § 10-4-609 governs terms of insurance

contracts).[8]  Allied's policy language and § 10-4-609(5) both provide coverage equal to "the gap between the amount an insured receives from an underinsured driver and the insured's UIM policy limits," *Freeman*, 946 P.2d at 585.  Under both the policy language and § 10-4-609(5), therefore, the extent of UIM coverage is dependent on the amount Zbegner recovers from the tortfeasor and remains unknown until that amount is determined through a settlement with or judgment against Hanson.  *See id.* at 585-86.

## C.

Zbegner nonetheless maintains that other policy language solely defines what he needs to establish to recover UIM benefits from Allied.  He relies on the following: "We will pay damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' . . . [s]ustained by an 'insured'; and . . . [c]aused by an accident."  Aplee. Supp. App. at 52.  Based on this language, Zbegner contends that all he needs to

---

[8]     Moreover, under Zbegner's construction of the policy, Allied would be required to pay him the full amount of his damages, subject to the UIM coverage limit, then proceed to recover what it could from the tortfeasor through subrogation.  Yet the record indicates Allied waived its right of subrogation and gave Zbegner its consent to settle with the tortfeasor's carrier.  *See* Aplee. Supp. App. at 51.  And under Colorado law, "[i]nsurers are not obligated to pay UIM benefits and then seek recovery from the liable party or his insurer under a right of subrogation."  *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 574 (Colo. App. 2003) (rejecting insureds' contention it was bad faith for insurer to deny UIM claims pending determination of amount of recovery from all of tortfeasor's liability insurers).

show is his legal entitlement to recover damages from the underinsured motorist and the extent of his damages. For this proposition he relies on *Borjas v. State Farm Mutual Automobile Insurance Co.*, 33 P.3d 1265, 1269 (Colo. App. 2001), which construed the phrase "legally entitled to recover damages," as used in § 10-4-609(1)(a). The court construed that phrase to mean "that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages." *Id.* Based on that language, he contends that the similar Allied policy language requires him to prove the tortfeasor's fault and his damages–and nothing more.

*Borjas* is inapposite to the issue here. In *Borjas*, the court considered whether the insured was "legally entitled to recover damages" from a negligent driver who was immune from liability, such that she could collect uninsured motorist benefits. *Id.* at 1268. But unlike Zbegner, the insured in *Borjas* first brought a claim against the negligent driver. Her action was dismissed on the basis of the driver's immunity under the Colorado Governmental Immunity Act. *See id.* at 1266. Therefore, at the point the insured in *Borjas* sought uninsured motorist benefits from her own insurer, the amount she had recovered from the tortfeasor–nothing–was already established. No deduction under § 10-4-609(5) was necessary to determine the extent of her coverage, and the court in *Borjas* simply did not address the issue raised here.

-12-

**D.**

The district court also dismissed Zbegner's bad-faith and statutory claims as not ripe for adjudication. "The determination of whether an insurer has in bad faith . . . breached its duties to an insured is one of reasonableness under the circumstances. In other words, would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003) (citation and quotations omitted). "It is reasonable for an insurer to challenge claims that are fairly debatable." *Id.*

Colorado Revised Statutes § 10-3-1115(1)(a) also provides that an insurer "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first party claimant."[9] We found no Colorado case defining the elements of a claim under § 10-3-1115(1)(a), but by its terms it sets forth a reasonableness standard as well.

The Colorado Court of Appeals has addressed the question of when a claim for bad-faith nonpayment of UIM benefits accrues. *See Cork v. Sentry Ins.*, 194 P.3d 422, 428 (Colo. App. 2008). Citing *Freeman*, the court held "a bad faith claim for nonpayment of UIM benefits cannot accrue until the insured has

---

[9]     "First-party claimant" is defined as one who asserts "an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." Colo. Rev. Stat. § 10-3-1115(1)(b)(I).

obtained a judgment against or . . . settled with the underinsured driver." *Id.*
Zbegner argues *Cork* does not apply in this case because it relied on *Freeman*, but
we have already rejected his contention that *Freeman* is distinguishable.

**III.**

Since, under Colorado law, the extent of UIM coverage available cannot be
known until the insured has resolved his claim against the tortfeasor it was
appropriate to consider whether Zbegner's claims were ripe. The district court
was correct in concluding his claim for UIM benefits involved an uncertain and
contingent event – his recovery from Hanson by judgment or settlement – and he
had not alleged (let alone demonstrated) undue hardship would result from
postponing resolution of this case until his claim against Hanson was resolved.

AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge