COLORADO COURT OF APPEALS                                   **2017COA67**

---

Court of Appeals No. 16CA0822
City and County of Denver District Court No. 15CV33216
Honorable Morris B. Hoffman, Judge

---

American Family Mutual Insurance Company,

Plaintiff-Appellee,

v.

Omar Ashour,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by CHIEF JUDGE LOEB
Kapelke* and Vogt*, JJ., concur

Announced May 18, 2017

---

Campbell Latiolais Averbach, LLC, Robyn B. Averbach, Colin C. Campbell, Denver, Colorado, for Plaintiff-Appellee

Blanton Law Firm, Michael W. Blanton, Evergreen, Colorado; Gerash Steiner, P.C., Daniel P. Gerash, Eric L. Steiner, Denver, Colorado, for Defendant-Appellant

---

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    In this insurance coverage action for declaratory judgment, defendant, Omar Ashour, appeals the district court's denial of his motion for summary judgment and its entry of summary judgment in favor of plaintiff, American Family Mutual Insurance Company (AFI). Ashour contends that the district court erred by ruling, as a matter of law, that his claim for underinsured motorist (UIM) coverage under his automobile insurance policy with AFI was precluded because he was not legally entitled to sue his employer or co-employee in tort for his injuries based on their immunity under the Workers' Compensation Act of Colorado (the Act). We agree with Ashour, reverse the judgment of the district court in favor of AFI, and remand with directions for entry of summary judgment in favor of Ashour.

I.    Background and Procedural History

¶ 2    Ashour is an employee and co-owner of Nubilt Restoration & Construction (Nubilt). While employed with Nubilt, Ashour was severely injured when he was pinned by a thirty-foot truck to a nearby tractor-trailer. The accident was caused by the negligence of his co-employee, Rebecca Peake, who failed to set the airbrake on

the truck that rolled backward and pinned Ashour to the other vehicle.[1]

¶ 3    After the accident, Ashour submitted a claim to Nubilt's workers' compensation carrier and subsequently received benefits. He also submitted a claim to Nubilt's corporate liability insurance provider and received a settlement for that claim based on a policy rider that allowed for coverage of workplace injuries. Ashour then made a claim under his personal automobile insurance policy with AFI for UIM benefits to recover the remainder of his alleged damages.

¶ 4    After receiving Ashour's claim, AFI filed this action in district court seeking a declaratory judgment as to whether Ashour was owed UIM coverage when the plain language in the policy limited UIM benefits to those situations in which the insured was "legally entitled to recover" from the owner or operator of an uninsured or underinsured motor vehicle. AFI alleged that the Act provided Ashour with his exclusive remedy for damages and that, because the Act immunized Nubilt and Peake from tort suits brought by

---

[1] Peake was cited by the Colorado State Patrol for careless driving resulting in bodily injury.

Ashour for work-related injuries, Ashour was not "legally entitled to recover" under the AFI UIM policy.

¶ 5 In his answer, Ashour alleged that the phrase "legally entitled to recover" had been interpreted by Colorado courts to mean that an insured must only establish fault of the party causing the injury (the tortfeasor) and the extent of the insured's damages, and that, accordingly, he was not required to show that he could proceed with a lawsuit against the tortfeasor(s). Ashour asserted as an affirmative defense that AFI was, therefore, estopped from denying coverage on the basis of the policy's "legally entitled to recover" language.

¶ 6 Subsequently, Ashour filed a motion for summary judgment, relying on *Borjas v. State Farm Mutual Automobile Insurance Co.*, 33 P.3d 1265 (Colo. App. 2001), in which a division of this court defined the phrase "legally entitled to recover" and ultimately concluded that an insured was "legally entitled to recover" even when the tortfeasor was immune from suit under the Colorado Governmental Immunity Act (CGIA). In its response to Ashour's motion for summary judgment, AFI distinguished *Borjas* and instead relied on *Continental Divide Insurance Co. v. Dickinson*, 179

P.3d 202 (Colo. App. 2007), in which another division of this court concluded that an independent contractor subject to a limited recovery provision in the Act was not entitled to claim benefits under his employer's UIM policy.

¶ 7      The district court agreed with AFI's interpretation of Colorado law and, in a written order, concluded that *Dickinson* was dispositive of Ashour's claim if Peake had acted within the scope and course of her employment. At the conclusion of its order, the district court denied Ashour's motion for summary judgment and allowed the case to proceed for a determination of whether Peake had been acting within the course and scope of her employment at the time of the accident.

¶ 8      Several weeks later, AFI filed its own motion for summary judgment asserting that, as a matter of law, Peake had been acting within the course and scope of her employment. After full briefing by both parties, the court entered a second written order, reaffirming its prior order on the coverage issue and concluding on undisputed facts that Peake was acting within the course and scope of her employment at the time of Ashour's accident. Accordingly, the court granted AFI's motion for summary judgment and declared

that AFI was not obligated under Ashour's policy to pay Ashour UIM benefits.

¶ 9     Ashour now appeals. Specifically, he challenges the district court's conclusion that he was not entitled to UIM benefits under his own insurance policy with AFI based on the immunity provided to Peake and Nubilt under the Act. He does not appeal the court's ruling that Peake was acting within the course and scope of her employment.

## II.     Standard of Review

¶ 10     We review the grant of a summary judgment motion de novo. *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo. 2002). In reviewing a motion for summary judgment, the nonmoving party is afforded all favorable inferences that may be drawn from the allegedly undisputed facts. *City of Longmont v. Colo. Oil & Gas Ass'n*, 2016 CO 29, ¶ 8 (citing *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo. 1999)).

¶ 11     For our review, we apply the same standard as the district court. *Id.* at ¶ 9. "Thus, our task on review is to determine whether . . . the district court correctly applied the law" when it ruled that Ashour was barred from receiving UIM benefits from AFI because he

was not legally entitled to recover against his employer or co-employee under the Act. *Id.* In doing so, we review the district court's legal conclusions de novo. *Id.*

### III.   Applicable Law

¶ 12    This case involves the application and interaction of two bodies of Colorado law: workers' compensation and uninsured or underinsured motorist (UM/UIM) coverage.

### A.   Workers' Compensation Law

¶ 13    The purposes of the Act are to protect employees who suffer injuries arising from their employment and to give injured workers a reliable source of compensation for their injuries. *Engelbrecht v. Hartford Accident & Indem. Co.*, 680 P.2d 231, 233 (Colo. 1984). Employers subject to the Act, including Nubilt, are required to secure insurance to cover their employees' claims for work-related injury. § 8-44-101(1), C.R.S. 2016.

¶ 14    An employer who has complied with the Act

> shall not be subject to the provisions of section 8-41-101; nor shall such employer or the insurance carrier, if any, insuring the employer's liability under said articles be subject to any other liability for the death of or personal injury to any employee . . . ; and all causes of action, actions at law, suits in

6

> equity, proceedings, and statutory and
> common law rights and remedies for and on
> account of such . . . personal injury to any
> such employee and accruing to any person are
> abolished except as provided in said articles.

§ 8-41-102, C.R.S. 2016.  There is no dispute that Nubilt was in compliance with the Act at the time of Ashour's accident and that Ashour has received workers' compensation benefits as a result of the accident.

¶ 15    Similarly, when an employer complies with the Act, such compliance is construed as

> a surrender by the employer, such employer's
> insurance carrier, and the employee of their
> rights to any method, form, or amount of
> compensation or determination thereof or to
> any cause of action, action at law, suit in
> equity, or statutory or common-law right,
> remedy, or proceeding for or on account of
> such personal injuries . . . of such employee
> other than as provided in said articles, and
> shall be an acceptance of all the provisions of
> said articles, and shall bind the employee
> personally.

§ 8-41-104, C.R.S. 2016.  Thus, Nubilt and its workers' compensation insurance carrier are immune from suit by Ashour for his injuries sustained in the course and scope of his employment.

7

¶ 16 By extension, co-employees are also immune from suit for injuries to a fellow employee arising out of the scope of employment. *Kandt v. Evans*, 645 P.2d 1300, 1304-05 (Colo. 1982). Thus, here, Peake is also immune from suit.

¶ 17 The immunity from suit provided by the Act is often referred to as the exclusivity provisions because the Act has been interpreted to provide the *exclusive* remedy to a covered employee for injuries sustained while the employee is performing services arising in the course of his or her employment. *Horodyskyj v. Karanian*, 32 P.3d 470, 474 (Colo. 2001) ("The exclusive-remedy provisions of the Act bar civil actions in tort against an employer for injuries that are compensable under the Act." (citing §§ 8-41-102, -104)). However, this exclusive remedy is limited to suits by an injured employee against his or her employer or co-employee; an injured employee may receive workers' compensation benefits *and* bring suit against a third-party tortfeasor. *See* § 8-41-203(1)(a), C.R.S. 2016; *Frohlick Crane Serv., Inc. v. Mack*, 182 Colo. 34, 38, 510 P.2d 891, 893 (1973) (The "Act is not to shield third-party tort-feasors [sic] from liability for damages resulting from their negligence."); *see also Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 100 (Colo. 1995).

¶ 18    Thus, the Act's exclusivity provisions can be summarized this way: the workers' compensation system is an agreement by employers to provide benefits to employees, regardless of fault, and in exchange for assuming that burden, the employer is immunized from tort claims for injuries to its employees. § 8-40-102(1), C.R.S. 2016 ("[T]he workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike."); *People v. Oliver*, 2016 COA 180M, ¶ 22.

## B.    UM/UIM Law

¶ 19    Colorado law requires that all automobile insurance policies insuring against loss resulting from bodily injury or death must provide UM/UIM coverage. § 10-4-609(1)(a), C.R.S. 2016. The statute sets out specific requirements for UM/UIM insurance policies, and if a policy violates those mandatory coverage requirements, courts will read those requirements into the policy. *McMichael*, 906 P.2d at 101.

¶ 20    Specifically, UIM coverage is intended to cover the difference, if any, between the amount of the limits of a tortfeasor's legal liability coverage and the amount of the damages sustained by the injured

party, up to the policy limits.  § 10-4-609(1)(c).  A division of this court has interpreted this subsection to mean that an insurer's obligation to pay UIM benefits is "triggered by exhaustion of the tortfeasor's 'limits of . . . legal liability coverage,' not necessarily any payment from or judgment against the tortfeasor."  *Jordan v. Safeco Ins. Co. of Am., Inc.*, 2013 COA 47, ¶ 29 (alteration in original) (citation omitted).

¶ 21    As relevant here, Colorado law limits UM/UIM coverage to "protection of persons insured thereunder who are *legally entitled to recover* damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom."  § 10-4-609(1)(a) (emphasis added). The statute also provides for payment of benefits when the party at fault is underinsured:

> Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is *legally entitled to collect* from the owner or driver of an *underinsured* motor vehicle.  An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident.

10

§ 10-4-609(4) (emphasis added).[2] AFI's policy tracks the "legally entitled to recover" language of the statute and explicitly provides coverage for underinsured vehicles: "We will pay compensatory damages for bodily injury which an insured person is *legally entitled to recover* from the owner or operator of an uninsured motor vehicle or an *underinsured* motor vehicle." (Emphasis added.)

¶ 22    At issue in this case is the phrase "legally entitled to recover." Colorado courts have considered the meaning of "legally entitled" language in the past, albeit not under the precise circumstances at issue in this case. For example, in *Newton v. Nationwide Mutual Fire Insurance Co.*, in the context of deciding whether the insurer was entitled to reduce the UIM benefits paid to the insured by the amount of personal injury protection benefits paid out under the same policy, the supreme court stated that "[u]ninsured motorist recovery is available only to persons 'legally entitled to recover

---

[2] While the statutory language in subsections (1)(a) and (4) varies slightly, we conclude there is no legally significant difference between the phrase "legally entitled to recover" and "legally entitled to collect." *See Borjas v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 1265, 1267 (Colo. App. 2001) (analyzing a policy with language "legally entitled to collect" against a statutory provision with the phrase "legally entitled to recover" without distinguishing between those phrases); *see also State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 324 n.12 (Ky. 2010).

damages from owners or operators of uninsured motor vehicles.'" 197 Colo. 462, 465, 594 P.2d 1042, 1043 (1979) (citation omitted). "Thus a claimant may not obtain payment under uninsured motorist coverage *without first establishing that the uninsured motorist's fault, normally negligence, caused the collision.*" *Id.* (emphasis added). This fault-based concept was again articulated in *DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167, 173-74 (Colo. 2001), in which the supreme court, in analyzing section 10-4-609(1)(a), interpreted subsection (1)(a) to mean that "an insured is entitled to recover UM/UIM benefits when a person who is at fault in an accident does not have any liability insurance" or is underinsured.

C.    Interaction Between the Act and UIM Coverage

¶ 23    The "legally entitled to recover" requirement is central to this case because of the immunity provided to employers and co-employees under the exclusivity provisions of the Act. The precise question before us is whether Ashour is "legally entitled to recover" under the meaning of the UM/UIM statute when he cannot sue Nubilt or Peake, the tortfeasors, due to their immunity under the Act.

12

¶ 24    Colorado courts have considered the interaction between the Act and the UM/UIM statute in very few instances.  In a basic sense, courts have noted that claims for UM/UIM benefits and claims for workers' compensation benefits are independent of one another.  *Benson v. Colo. Comp. Ins. Auth.*, 870 P.2d 624, 626 (Colo. App. 1994) ("We conclude that the trial court is the proper forum for resolution of plaintiff's claim for uninsured motorist benefits and that this claim is independent of any workers' compensation claim.").

¶ 25    In *McMichael*, where an employee was injured on the job by a third-party tortfeasor who was underinsured, the Colorado Supreme Court held that the injured employee was entitled to benefits under both workers' compensation and his employer's UIM policy because "[t]he [UIM] benefits do not constitute workers' compensation benefits and do not result because of a suit brought by McMichael against [his employer]." *McMichael*, 906 P.2d at 100. That case, however, did not involve a claim for UIM benefits under the injured worker's personal UIM policy.

¶ 26    Colorado courts have also tended to be protective of the benefits provided by UM/UIM coverage.  For example, an insurance

policy provision for the reduction of UIM benefits by the amount paid by workers' compensation is void. *Nationwide Mut. Ins. Co. v. Hillyer*, 32 Colo. App. 163, 165, 509 P.2d 810, 811 (1973). Colorado law also does not allow UIM benefits to be offset by any other coverage, including workers' compensation benefits. § 10-4-609(1)(c); *see also Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 583-84 (10th Cir. 2016) (citing *Hillyer*, 32 Colo. App. at 165, 509 P.2d at 811) (compiling Colorado cases allowing recovery in addition to workers' compensation benefits without offset).

### D. *Borjas*: UM/UIM Coverage and Sovereign Immunity

¶ 27 We now turn to an analysis of *Borjas*, the case relied on by Ashour and distinguished by AFI and the district court.

¶ 28 In *Borjas*, a division of this court concluded that a tortfeasor's immunity under the CGIA did not bar an injured party from recovering UM/UIM benefits from her own insurer because the phrase "legally entitled to recover damages," as used in section 10-4-609, simply "means that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages." *Borjas*, 33 P.3d at 1269. The

immunity of the uninsured tortfeasor under the CGIA was, thus, irrelevant for purposes of UM/UIM coverage.

¶ 29    Borjas was injured in a car accident when her personal vehicle was hit by a police car driven by an Alamosa police officer responding to an emergency. *Id.* at 1266.[3]

¶ 30    To recover damages, Borjas first attempted to sue the officer and the City of Alamosa, but her case was dismissed because the officer and the City were both immune from suit under the CGIA. *Id.* at 1266-67.  Borjas then made a claim under her own insurance policy for UM benefits. *Id.* at 1267.  State Farm denied the claim, and Borjas sued to enforce payment of benefits under her insurance policy. *Id.*  The insurance policy, similar to the one here, restricted UM/UIM benefits to situations in which the insured was "legally entitled to collect" from the driver of an uninsured vehicle. *Id.*  The district court dismissed the action because the officer and the City were immune under the CGIA, "and therefore [Borjas] was not legally entitled to collect damages from them." *Id.*

¶ 31    On appeal, a division of this court defined the issue as: "whether § 10-4-609 requires coverage when an injured motorist

_____

[3] Workers' compensation was not at issue in that case.

15

cannot collect damages from a negligent motorist because the tortfeasor is immune from liability pursuant to the CGIA . . . ." *Id.* at 1268.

¶ 32 The division determined that the insurance company's interpretation of the policy to deny coverage when the tortfeasor was immune from suit under the CGIA violated public policy. *Id.* at 1267, 1268. Citing the policies underlying the UM/UIM statute, the division concluded that "[i]t is entirely consistent with this public policy to construe § 10-4-609 to require that UM insurance coverage apply even though the tortfeasor is immune from liability under the CGIA." *Id.* at 1268. The court reasoned that, *from the perspective of the injured party*, the lack of legal responsibility had the same effect as being injured by an uninsured driver. *Id.*

¶ 33 The division in *Borjas* acknowledged a split in cases from other jurisdictions that had addressed the issue of UM/UIM coverage where the tortfeasor was protected from liability by some form of governmental immunity. Nevertheless, the division supported its outcome as follows:

> The courts that have held that UM coverage
> was mandated where the tortfeasor is
> protected by some form of governmental

16

immunity have all found that interpretation consistent with the purposes of their UM statutes, i.e., to provide that motorists may purchase insurance to protect themselves from negligent motorists who cannot or will not pay for the damages they have caused. The UM statutes discussed in these cases all have language similar to § 10-4-609. Thus, we find the holdings in these cases consistent with the purpose of § 10-4-609 described above.

The contrary line of cases all give a strict interpretation to the statutory language "legally entitled to recover" that we find inconsistent with the public policy expressed in § 10-4-609.

*Id.* at 1269.

¶ 34    The division also found further support for providing coverage in a prominent treatise on UM/UIM coverage, and it summarized the following three reasons why a

tortfeasor's immunity should not preclude a UM claim: (1) while tort immunity protects the tortfeasor as intended, it should have no effect on an insurance company providing first party UM insurance coverage; (2) it is consistent with the strong public policy of providing insurance coverage to protect drivers when no compensation is available from the negligent tortfeasor; and (3) tort immunities are personal to the tortfeasor and therefore cannot be raised by an insurer.

*Id.* (citing 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 7.14, at 388-90 (2d ed. 2001)).

¶ 35    Importantly, the division also specifically noted that its conclusion did not contravene the public policy expressed in the CGIA because "[t]hose persons and entities who are immune from liability under the CGIA are unaffected by this holding."  *Id.*

¶ 36    In succinct terms, the court held

> that the phrase "legally entitled to recover
> damages," as used in § 10-4-609, means that
> the insured must be able to establish that the
> fault of the uninsured motorist gave rise to
> damages and the extent of those damages.  We
> further conclude that the public policy
> expressed in § 10-4-609 requires that UM
> insurance policies must provide coverage for
> the protection of a motorist injured by the
> negligence of a driver who is immune from
> liability under the CGIA.

*Id.* (citation omitted).

### E.    *Dickinson*: UM/UIM Coverage and Independent Contractors Under the Act

¶ 37    Next, we turn to an analysis of *Dickinson,* the case relied on by AFI and found to be controlling by the district court.

¶ 38    Several years after *Borjas*, a division of this court was presented with the novel issue of determining whether an

18

independent contractor subject to capped tort damages from his employer by section 8-41-401(3), C.R.S. 2016, of the Act could recover on his claim for additional benefits from his employer's UM/UIM policy. *Dickinson,* 179 P.3d at 203-04.

¶ 39    While on the job, Dickinson sustained injuries when he fell from a truck driven by his co-employee. *Id.* at 203. Dickinson was an independent contractor working for United Technical Services (UTS), and the co-employee/tortfeasor was an employee of UTS. *Id.*

¶ 40    An administrative law judge rejected Dickinson's workers' compensation claim against UTS because he was an independent contractor, not an employee of UTS, and, therefore, was not protected under the Act. *Id.* To recover damages for his injuries, Dickinson then sued UTS and his co-employee in tort. *Id.* The trial court ruled that Dickinson's recovery against his employer and co-employee was limited to $15,000 by section 8-41-401(3) of the Act because he elected in writing not to be covered by UTS's workers' compensation policy and did not purchase his own workers' compensation insurance. Dickinson settled the tort case for $15,000. *Id.* at 204.

¶ 41    To recover his damages in excess of $15,000, Dickinson then filed a claim under UTS's UM/UIM auto insurance policy, claiming that the $15,000 statutory limit to his tort recovery rendered UTS and its employee underinsured.  *Id.*

¶ 42    UTS's auto insurer brought a declaratory action to determine whether Dickinson's claim was precluded because of the limitation in section 8-41-401(3).  *Id.*  On cross-motions for summary judgment, the district court ruled in favor of the insurer.  *Id.*

¶ 43    On appeal to this court, the division's analysis focused on section 8-41-401(3) of the Act.  As a matter of first impression, the division defined the issue as "whether the Act's $15,000 limitation on certain tort claims precludes recovery against a UM/UIM insurer of an employer for damages suffered in a work-related accident in which the tortfeasor is in the same employ as the claimant."  *Id.*

¶ 44    As part of its analysis, the division broadly stated that "[t]he majority of jurisdictions that have addressed this issue hold that 'an insured is not "legally entitled to recover" under the uninsured motorist provisions of an insurance policy if the exclusivity provisions of the workers' compensation statute would bar an action against the tortfeasor.'"  *Id.* (quoting *Matarese v. N.H. Mun.*

*Ass'n Prop.-Liab. Ins. Tr., Inc.*, 791 A.2d 175, 180-81 (N.H. 2002)). The division agreed with this view and stated it was consistent with Colorado statutes. *Id.* at 205.

¶ 45 In considering the policy behind section 10-4-609, the division found that the statute recognizes that injured parties have the right to recover for losses caused by uninsured motorists in the same manner as if the motorist were insured. *Id.* "But because here the tortfeasor and UTS were insured, Dickinson's public policy argument for avoiding the $15,000 limitation would place him in a better position. . . . Hence, we discern no absurdity in giving effect to the limitation in § 8-41-401(3), notwithstanding § 10-4-609(1), when the tortfeasor enjoys this immunity." *Id.* at 206. Again, the division's analysis focused on the recovery limitation and limited immunity in section 8-41-401(3).

¶ 46 *Dickinson* also specifically distinguished *Borjas* in three ways. First, the division noted that some of the out-of-state cases cited in *Borjas* reached different outcomes when workers' compensation immunity was at issue rather than sovereign immunity. *Id.* at 206-07.

¶ 47     Second, the division explained that *Borjas* allowed recovery by an insured who had purchased the statutorily mandated UM/UIM coverage and would have otherwise remained uncompensated if CGIA immunity had defeated coverage of such benefits.  The division contrasted that scenario with the plaintiff in *Dickinson*, who could have protected himself from the $15,000 cap but chose not do so.  *Id.* at 207.

¶ 48     Third, the division in *Dickinson* determined that while the public policies of the CGIA and the UM/UIM statute at issue in *Borjas* were not at odds with each other, the policies behind section 8-41-401(3) and the exclusivity provisions of the Act *were* at odds with each other under the circumstances of the case.  *Id.* at 208. To allow Dickinson to recover above the cap in section 8-41-401(3) through the employer's UM/UIM insurance would, in the division's view, "undercut" the policy of encouraging independent contractors to obtain workers' compensation coverage, while unjustly burdening an employer or co-employee with additional liability based on an independent contractor's choice to forego workers' compensation coverage.  *Id.* at 207.  The division thus reasoned that it would be unjust to allow Dickinson to recover money from his employer

22

above the $15,000 cap through the employer's insurance policy when that employer enjoyed immunity for any damages above $15,000 under section 8-41-401(3).

¶ 49     The division summarized its holding as follows:

> In sum, we hold that where an independent contractor fails to obtain his own workers' compensation insurance and does not dispute that he could have done so, § 8-41-401(3) precludes the independent contractor from recovering more than $15,000 in damages from the UM/UIM insurer of the employer of a tortfeasor who is in the same employ as the independent contractor.

*Id.* at 208.  As pertinent here, the division expressly recognized the narrow application of its holding and specifically noted that it might not be applicable to a claim for benefits by an injured independent contractor against his or her own UIM insurer: "Nevertheless, we acknowledge that *the statutory policies which we have reconciled may interact differently if a claimant subject to § 8-41-401(3) sought UM/UIM benefits from the claimant's own insurance carrier*, and we express no opinion on such a scenario."  *Id.* (emphasis added.)

## IV.    Discussion

¶ 50     Ashour contends that the district court erred as a matter of law by applying the very narrow and limited holding in Dickinson to

this case to preclude his claim for coverage of UM/UIM benefits from AFI. We agree and, for the reasons below, conclude that the district court misapplied the law in concluding that Dickinson should control the outcome of the case. Rather, we conclude that the holding and reasoning in Borjas are applicable here and should be extended to allow UM/UIM coverage to Ashour under his policy with AFI.

A. *Dickinson* is not Applicable to the Circumstances in this Case

¶ 51     Factually, *Dickinson* is not analogous to this case in several key respects.

- Dickinson was not an employee, but an independent contractor without benefits under the Act. *Dickinson,* 179 P.3d at 203.

- Dickinson sought recovery of UIM benefits from his employer's policy, not his own personal policy. *Id.* at 204.

- Dickinson made the choice not to be covered by his employer's workers' compensation policy and not to protect himself with his own workers' compensation insurance. *Id.* at 203-04

24

In contrast, Ashour was an employee who was injured on the job, was fully covered under the Act, and opted to receive the protection of UM/UIM benefits through his personal auto insurance policy.

¶ 52    In our view, the fact that Ashour sought recovery of benefits under his own insurance policy is critical for two reasons. First, Ashour did not seek to recover additional damages from the immune parties in this case — his employer and co-employee. And, second, *Dickinson* expressly acknowledged that the outcome may be different where the injured party (in that case an independent contractor) made a claim with his or her own insurer, and the division, accordingly, expressed no opinion on the applicability of its holding to the situation present in this case. *Id.* at 208.

¶ 53    Analytically, *Dickinson* is also distinguishable because it did not consider the meaning of "legally entitled to recover" under section 10-4-609. Instead, it considered only the recovery cap for independent contractors provided in section 8-41-401(3). *Id.* Indeed, the division limited its holding to the circumstances where an independent contractor had chosen not to be covered by the Act and was subject to the recovery cap in section 8-41-401(3). *Id.* Section 8-41-401(3) is not relevant here because Ashour is not an

25

independent contractor, but rather an employee of Nubilt.  The issue and holding in *Dickinson* were limited by three factors that were present in that case: the applicability of section 8-41-401(3) to the injured party; the request by the injured party for coverage under an employer's UM/UIM insurer; and the presence of a co-employee tortfeasor.  The only one of those factors present here is that Ashour was also injured by a co-employee.  Thus, contrary to the district court's conclusion, much of *Dickinson*'s reasoning does not apply to the circumstances of this case.

¶ 54    *Dickinson* is also distinguishable from a policy standpoint.  As noted by the division in *Dickinson*, the policy behind section 8-41-401(3) is to encourage independent contractors to choose workers' compensation coverage under their employer's policy or in a personal policy by capping tort recovery at $15,000.  *Id.* at 207.  That statutory cap and the policy underlying it are simply not relevant to Ashour's case.  Moreover, the division in *Dickinson* emphasized that the employer and co-employee were subject to immunity from damages exceeding $15,000 and that it would have been unjust to subject them to additional liability (i.e., a payout by the employer's insurance company) based on Dickinson's election

not to obtain coverage. *Id.* That concern also has no bearing here because Ashour sought recovery of benefits from his own insurer, which would not subject his employer or co-employee to further liability.[4]

¶ 55　We therefore conclude that *Dickinson* is not applicable to Ashour's case. Hence, we also conclude that the district court misapplied the law when it found *Dickinson* controlling.

　　　B.　*Borjas* is Analogous to the Circumstances Here

¶ 56　In contrast to *Dickinson*, the reasoning and holding in *Borjas* have a broader application. We start, again, with a basic comparison between the facts in this case and those in *Borjas*.

- Both Ashour and Borjas sought to recover benefits under their personal UM/UIM insurance policies and thus chose to protect themselves from otherwise unrecoverable damages. *Borjas*, 33 P.3d at 1266.

---

[4] Our analysis also leads us to reject AFI's assertions that the exclusivity provisions of the Act are broad enough to preclude any compensation to an injured employee from other sources in excess of those provided by the formulas under the Act. As discussed above, Colorado law allows injured employees to receive workers' compensation benefits and benefits or payouts from sources other than their employer or co-employee. *See Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 100 (Colo. 1995); *Benson v. Colo. Comp. Ins. Auth.*, 870 P.2d 624, 626 (Colo. App. 1994).

27

- The tortfeasor in each case was cloaked in immunity from tort, one under the CGIA and the other through the exclusivity provisions of the Act. *Id.* at 1267.

- Both cases required the court to interpret the phrase "legally entitled to recover" in section 10-4-609(1)(a). *Id.* at 1268.

¶ 57 From a policy standpoint, *Borjas* focused on the policies behind the UM/UIM statute and the immunity provided under the CGIA. While the CGIA is not at issue here, we discern that the reasoning in *Borjas* is nonetheless applicable because both the CGIA and the Act provide complete immunity from tort actions. Thus, AFI's argument that *Borjas* is distinguishable because it did not address the exclusivity provisions of the Act (i.e., employer and co-employee immunity) simply misses the mark.

¶ 58 AFI also attempts to distinguish *Borjas* because the immunity provided by the CGIA left the plaintiff in that case with *no* means of recovery (as if the tortfeasor were uninsured), whereas here, even though Nubilt and Peake were immune from suit, Ashour received benefits from Nubilt's workers' compensation insurer. We are not persuaded. This argument ignores the fact that the language of

AFI's UM/UIM policy, consistent with section 10-4-609, provides coverage where the tortfeasor is *underinsured.* The statute defines underinsured tortfeasors simply and broadly as those who are covered by insurance at the time of the accident. § 10-4-609(4). Thus, Nubilt and Peake are effectively underinsured in that Ashour received benefits up to Nubilt's workers' compensation insurance limits but still has additional damages from his workplace injury. It is the exhaustion of Nubilt's and Peake's limits of liability coverage (i.e., workers' compensation insurance) that triggers AFI's obligation to pay UM/UIM benefits. *Jordan,* ¶ 29. From the "perspective of the injured innocent" employee, "the lack of legal responsibility has the same effect" as that of an underinsured driver. *Borjas,* 33 P.3d at 1268.

### C. Analysis and Application of *Borjas*

¶ 59    Although we conclude *Borjas* is guiding and instructive here, we recognize that it is not directly on point because it does not address workers' compensation or the issue of co-employee tortfeasors. Hence, the question to be resolved is whether the immunity provided to government employees by the CGIA is somehow distinguishable from the immunity provided to employers

29

and co-employees under the Act.  We conclude there is no such meaningful distinction.  We agree with *Borjas*'s broad interpretation of the phrase "legally entitled to recover," because it is consistent with the underlying policies of both the Act and the UM/UIM statute, and, thus, we conclude that immunity under the Act, like immunity under the CGIA, does not bar an injured employee's recovery of UM/UIM benefits from his or her personal insurer.

¶ 60  As a threshold matter, we consider AFI's basic argument that its UM/UIM policy language is unambiguous and consistent with the UM/UIM statute, and that a plain reading of that language results in an insured such as Ashour falling outside of the policy's UM/UIM coverage because he is not "legally entitled to recover" from Peake, the tortfeasor.  AFI, however, concedes that no Colorado case law is directly on point under the circumstances of this case and, accordingly, relies on out-of-state case law that purportedly represents the "majority view."  We acknowledge this argument but are unpersuaded.

¶ 61  We give the words of an insurance contract their plain meanings, avoiding strained and technical interpretations. *Progressive Specialty Ins. Co. v. Hartford Underwriters Ins. Co.*, 148

P.3d 470, 474 (Colo. App. 2006). However, in the context of UM/UIM coverage, if a UM/UIM policy violates the statutory coverage requirements, courts will read those requirements into the policy. *McMichael*, 906 P.2d at 101. Similarly, Colorado courts have required UM/UIM coverage in instances where the insurance carrier's interpretation of its UM/UIM policy denying coverage violated the public policy behind the UM/UIM statute. *Borjas*, 33 P.3d at 1267, 1268; *see also Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo. 1998) (stating that courts have a "heightened responsibility" to scrutinize insurance policies that unduly compromise the insured's interests; any provision of an insurance policy that violates public policy is unenforceable).

¶ 62     As AFI points out, and as we discuss in more detail below, some out-of-state cases have concluded that the phrase "legally entitled to recover" is unambiguous and means more than simply showing that the uninsured/underinsured motorist was "at fault." However, we choose to adopt the *Borjas* interpretation of that phrase because it is consistent with the policies underlying the UM/UIM statute, the purpose of which is to compensate the injured party "for injuries received at the hands of one from whom damages

31

cannot be recovered." *Borjas*, 33 P.3d at 1267 (quoting *Farmers Ins. Exch. v. McDermott*, 34 Colo. App. 305, 308-09, 527 P.2d 918, 920 (1974)).

¶ 63 Specifically, the division in *Borjas* held that "legally entitled to recover" under section 10-4-609(1)(a) "means that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages." *Id.* at 1269. The division did not limit its interpretation of that language or tie its interpretation to situations where the injured party has no other means of recovery.

¶ 64 It necessarily followed from *Borjas*'s fault-based approach that "the public policy expressed in § 10-4-609 requires that [UM/UIM] insurance policies must provide coverage for the protection of a motorist injured by the negligence of a driver who is immune from liability." *Id.* And, of course, the immunity at issue in that case was that provided under the CGIA.

¶ 65 Thus, we must consider whether the policy considerations articulated in *Borjas* are equally applicable where, as here, the plaintiff was injured by the negligence of parties who are immune under the Act. We conclude that the policies underlying the Act's

exclusivity provisions and the UM/UIM statute do not conflict and that, therefore, Ashour is entitled to make a claim for UM/UIM benefits against AFI, his personal auto insurer.

¶ 66    The essential purpose of the Act is to protect employees who sustain injuries arising out of their employment. *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo. 1982). The Act is intended to provide a reliable and speedy source of compensation, and consequently, it does not require proof of fault before the worker can recover benefits. *Id.*

¶ 67    "In order to effectuate the Act's basic goals of speedy and reliable compensation of injured workers, the General Assembly has enacted a formula which calculates awards to an injured worker based on loss of earning power at the time of injury." *Id.* For example, the temporary benefits Ashour was awarded were calculated as sixty-six and two-thirds percent of his average weekly wage while he was working at Nubilt. § 8-42-105(1), C.R.S. 2016. There are also caps and limits on the amount of disability benefits provided each year. § 8-42-107.5, C.R.S. 2016. Thus, the district court accurately stated in its order that the "General Assembly has made the decision to exchange a comprehensive, prompt, fault-free

and largely determinate compensation system for the vagaries of the common law's fault-based tort system, at the price of sometimes *undercompensating* injured parties." (Emphasis added.)

¶ 68   The UM/UIM statutory scheme implicates other compelling policy considerations. The UM/UIM statute was enacted in 1965 to ensure adequate compensation to victims injured in vehicular accidents. *See* Ch. 91, sec. 2, § 72-12-19, 1965 Colo. Sess. Laws 333-34. Since then, Colorado courts have consistently concluded that the prime concern of the UM/UIM statute is the "need to compensate the innocent driver for injuries received at the hands of one from whom damages cannot be recovered." *Borjas*, 33 P.3d at 1267 (quoting *McDermott*, 34 Colo. App. at 308-09, 527 P.2d at 920). This "legislative purpose is satisfied when an insurance policy provides coverage for injury caused by an uninsured [or underinsured] motorist to the same extent as for injury caused by an insured motorist." *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 492 (Colo. 1998).

¶ 69   Concisely stated, "the public policy of Colorado requires that insurance coverage be available to protect motorists from losses caused by other negligent drivers who cannot or will not pay for the

damages they have caused." *Borjas*, 33 P.3d at 1268; *see also* Ch. 91, sec. 1, 1965 Colo. Sess. Laws 333.

¶ 70    The division in *Borjas* explained that the strict interpretation of "legally entitled to recover" advocated by the insurance company was not consistent with the public policy of section 10-4-609 as outlined above.[5]  33 P.3d at 1269.  The division further reasoned that the policies behind section 10-4-609 did not adversely affect the immunity provided under the CGIA because "[t]hose persons and entities who are immune from liability under the CGIA are unaffected by this holding." *Id.*

---

[5] We assume that the General Assembly is cognizant of the division's 2001 decision in *Borjas* and that the division's interpretation of section 10-4-609(1)(a), C.R.S. 2016, in that case was approved by the legislature because the statute has been amended twice since that decision and subsection (1)(a) has remained unchanged.  Ch. 413, secs. 1, 2, § 10-4-609(1)(c), (2), (4), (5), 2007 Colo. Sess. Laws. 1921-22; Ch. 196, sec. 1, § 10-4-609(6), (7), 2010 Colo. Sess. Laws. 845-46; *People v. Sandoval*, 2016 COA 57, ¶ 36 ("The General Assembly is presumed cognizant of relevant judicial precedent when it enacts legislation in a particular area. And, when a statute is amended, the judicial construction previously placed upon that statute is deemed approved by the General Assembly to the extent the provision remains unchanged." (quoting *U.S. Fid. & Guar., Inc. v. Kourlis*, 868 P.2d 1158, 1162-63 (Colo. App. 1994))); *see also Jordan v. Safeco Ins. Co. of Am., Inc.*, 2013 COA 47, ¶ 28.

¶ 71     Similar to the analysis in *Borjas*, the policies behind the Act and behind the UIM statute are not in conflict. To preclude Ashour from claiming benefits from his own insurance carrier under his UM/UIM policy would effectively deny him the full protection for injuries caused by underinsured negligent drivers contrary to the intent of the General Assembly. Moreover, allowing him to claim benefits from his own insurance carrier would not in any way affect the immunity provided to his employer and co-employee by the Act. Unlike the plaintiff in *Dickinson*, Ashour did not seek to recover additional damages from his immune employer or co-employee; instead, he sought only to enforce the terms of his insurance policy and recover benefits from his own insurer.

¶ 72     In addition, the policies behind the Act are focused on the protection of the injured worker (here, Ashour), not the protection of a third-party auto insurance company. Similarly, the UM/UIM statute is focused on protecting injured motorists, not the insurance companies who are statutorily required to offer the coverage. In our view, AFI should not be allowed to deny coverage to Ashour when the purpose of the UM/UIM statutory mandate is to protect those with coverage from the financial burdens imposed by

tortfeasors who are unable to pay for the full scope of damages they cause.

¶ 73    In sum, we conclude that Ashour's claim for UIM benefits under his policy with AFI is not barred by the exclusivity provisions of the Act, or by the "legally entitled to recover" language of the policy.

### D.    Out-of-State Authority

¶ 74    Both parties discuss non-Colorado case law in their briefs on appeal, and, in addition, both *Borjas* and *Dickinson* cite foreign cases in support of their respective holdings.  Indeed, AFI even urges us to adopt what it perceives to be the "majority rule" that workers' compensation exclusivity provisions are a bar to recovery of UM/UIM benefits where the tortfeasor is a co-employee.[6]  Thus, we address some of the out-of-state cases pertinent to our analysis.

---

[6] Based on our review of non-Colorado authority, we are skeptical that the "majority rule" is that articulated by AFI.  In that regard, we note that while courts in various jurisdictions are split on this issue, the opinions and reasoning in most cases are very nuanced, such that we are unable to discern a clear majority; the facts and analyses vary so widely that they do not lend themselves to a straight comparison.  Thus, we disagree with *Continental Divide Insurance Co. v. Dickinson*, 179 P.3d 202, 204 (Colo. App. 2007), to the extent it stands for the proposition that denying UM/UIM

¶ 75      Courts in a number of states have found no bar to recovery of UM/UIM benefits, and in so holding, they have used the same fault-based definition of the phrase "legally entitled to recover" articulated in *Borjas.* For example, as in the case here, in *Barfield v. Barfield*, 742 P.2d 1107, 1109 (Okla. 1987), an employee was injured by a co-employee during the course and in the scope of their employment and then applied for UM/UIM benefits from his personal auto insurer. The insurer argued that UM/UIM coverage was not available to the injured employee because the alleged tortfeasor was immune from tort liability under Oklahoma's workers' compensation statute, and the insured was, therefore, not "legally entitled to recover." *Id.* at 1111. The court in *Barfield* relied on existing Oklahoma precedent to determine that the phrase "legally entitled to recover" meant that the insured "must be able to establish *fault* on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." *Id.* at 1112 (quoting *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 685 (Okla. 1983)). The *Barfield* court explicitly stated that the phrase did not

coverage to employees covered by workers' compensation who are injured by a co-employee is the "majority" view.

38

mean "that an insured must be able to proceed against an uninsured/underinsured in *tort* in order to collect uninsured motorist benefits." *Id.* The Oklahoma Supreme Court subsequently extended its decision in *Barfield* by reaffirming the fault-based definition of "legally entitled to recover" and determining that there was no distinction between an employee who sought to recover from his own policy or his employer's UM/UIM policy. *Torres v. Kan. City Fire & Marine Ins. Co.*, 849 P.2d 407, 411 (Okla. 1993).

¶ 76     Similarly, in *Southern Farm Bureau Casualty Insurance Co. v. Pettie*, 924 S.W.2d 828, 831 (Ark. Ct. App. 1996) (citing *Hettel v. Rye*, 475 S.W.2d 536, 537-38 (Ark. 1972)), the court noted that the phrase "legally entitled to recover" only requires "a showing of fault on the part of the uninsured motorist." Accordingly, the court held that the exclusive remedy provision of the Arkansas workers' compensation statutes did not bar the injured worker from being "legally entitled to recover" UM/UIM benefits. *Id.* at 832; *see also Jenkins v. City of Elkins*, 738 S.E.2d 1, 12-14 (W. Va. 2012) (identifying *Borjas* as a leading case that illustrated the majority interpretation of the phrase "legally entitled to recover," and holding such phrase to mean that an insured is entitled to UM/UIM

coverage merely by establishing fault on the part of the tortfeasor and the amount of the insured's damages).

¶ 77    We are persuaded by these cases because they are consistent with the reasoning and holding in *Borjas* and with the public policies articulated in Colorado's UM/UIM statutory framework.

¶ 78    In contrast, those courts in other states that have found the workers' compensation exclusivity provisions to be a bar to UM/UIM coverage have relied on a much stricter definition of "legally entitled to recover." For example, in *Wachtler v. State Farm Mutual Automobile Insurance Co.*, 835 So. 2d 23, 26 (Miss. 2003), the Mississippi Supreme Court found that the Mississippi workers' compensation exclusivity provision barred an injured employee from recovering UM benefits under the employee's own insurance policy based on its determination in a prior case that the phrase "legally entitled to recover" meant "those instances where the insured would be entitled at the time of the injury *to recover through legal action.*" *Id.* (emphasis added). The court distinguished *Barfield*, in part, on the grounds that its holding was contrary to already existing Mississippi precedent interpreting the phrase "legally entitled to recover." *Id.* at 27; *see also Allstate Ins. Co. v.*

*Boynton*, 486 So. 2d 552, 555-56 (Fla. 1986) (relying on a definition of "legally entitled to recover" requiring that the case against the tortfeasor be able to be "reduced to judgment"); *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) (distinguishing prior cases that determined that "legally entitled to recover" required proof of fault and damages and deciding that the phrase was not ambiguous under the circumstances of Slusher's case).

¶ 79    We are simply not persuaded by the analysis in cases such as *Wachtler*[7] because they are not consistent with the policies underlying Colorado's UM/UIM statute or the division's analysis in *Borjas*.

## V.    Conclusion

¶ 80    The district court's judgment is reversed.  The case is remanded with directions to enter summary judgment in favor of Ashour, declaring, as a matter of law, that AFI must provide coverage of UM/UIM benefits to Ashour upon his proof that Peake

---

[7] Indeed, we are much more persuaded by the dissenting opinion in *Wachtler v. State Farm Mutual Automobile Insurance Co.*, 835 So. 2d 23, 28-29 (Miss. 2003) (Diaz, J., dissenting), based on its emphasis of the importance of the public policies and purposes of UM/UIM coverage.

was at fault for causing his injuries and of the extent of his damages in excess of the coverage offered him under the Act.

JUDGE KAPELKE and JUDGE VOGT concur.