1
 2024 CO 66 Kevin Klabon, Plaintiff v. Travelers Property Casualty Company of America. Defendant No. 23SA142
Supreme Court of Colorado, En Banc
September 30, 2024
 2
 
          
 Certification of Question of Law United States District Court
 for the District of Colorado Case No. 22-cv-02557- NRN .
 
 
          
 Attorneys for Plaintiff: Western Slope Law Nelson A. Waneka,
 Glenwood Springs, Colorado Bendinelli Law Firm, P.C. George
 Norelli Westminster, Colorado.
 
 
          
 Attorneys for Defendant: Montgomery Amatuzio Chase Bell Jones
 LLP Max K. Jones, Jr. Maddin M. Nelson,
 
 3
 
          Hayleigh
 P. Lidbury Alex J. Gunning, Denver, Colorado.
 
 
          
 Attorneys for Amicus Curiae American Property Casualty
 Insurance Association: Lewis Roca Rothgerber Christie LLP
 Kendra N. Beckwith Brian J. Spano Denver, Colorado.
 
 
          
 Attorneys for Amicus Curiae Colorado Defense Lawyers
 Association: Sutton Booker, P.C. Erica O. Payne, Denver,
 Colorado Waltz|Reeves Christopher R. Reeves Denver, Colorado
 Zupkus & Angell, P.C. Amy L. Twohey Denver, Colorado.
 
 
          
 Attorneys for Amicus Curiae Colorado Trial Lawyers
 Association: Jordan Law Michael J. Rosenberg, Greenwood
 Village, Colorado.
 
 
          
 Attorneys for Amicus Curiae Colorado Workers'
 Compensation Education Association: The Elliott Law Offices,
 PC Alonit Katzman Arvada, Colorado.
 
 
          
 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT,
 JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE
 SAMOUR joined.
 
 4
 
          
 OPINION
 
 
          
 BERKENKOTTER, JUSTICE.
 
 
          ¶1
 In this case, we accepted jurisdiction under C.A.R. 21.1 to
 answer the following question of law certified to us by the
 United States District Court for the District of Colorado:
 
 
 Whether an employee injured in the course of his employment
 by the acts of an underinsured third-party tortfeasor, and
 who receives worker's compensation benefits as a result,
 is barred, under Colorado's Workers' Compensation
 Act, Colo. Rev. Stat § 8-41-104, from bringing suit
 against his employer's UM/UIM insurer?
 
 
          ¶2
 We conclude that the answer to this question is no. Under
 Colorado law, an employee who is injured in the course of
 their employment by a third-party tortfeasor and who receives
 workers' compensation benefits as a result of that injury
 can also sue to recover benefits from their employer's
 separate uninsured/underinsured motorist ("UM/UIM")
 carrier. We reach this conclusion because the plain language
 of the pertinent section of the Workers' Compensation Act
 of Colorado ("WCA"), §§ 8-40-101 to
 8-47-209, C.R.S. (2024), immunizes only employers and their
 workers' compensation insurance carriers from liability.
 
 
          ¶3
 We further determine that when an employee is injured by the
 negligence of a third party, rather than by an employer or
 co-employee, a suit to recover UM/UIM benefits does not
 constitute a suit against the employer or co-employee and,
 therefore, is not barred by the exclusivity clause of the
 WCA. Accordingly, we answer the certified question in the
 negative.
 
 5
 
          I.
 Facts and Procedural History[1]
 
 
          ¶4
 Plaintiff Kevin Klabon worked as a technician for CMI Legacy,
 LLC ("CMI"), a company that installs and services
 heating, ventilation, and air conditioning units in Denver,
 Colorado. While working for and driving a van owned by CMI,
 Klabon was struck by a vehicle driven by Rodrigo
 Canchola-Rodriguez when Canchola-Rodriguez failed to stop at
 a red traffic light. Klabon alleges that he suffered serious
 injuries in the accident, causing him to incur over $500,000
 in medical expenses. Klabon sought and recovered workers'
 compensation benefits from CMI through its WCA carrier,
 Pinnacol Assurance. He subsequently settled a claim with
 Canchola-Rodriguez's auto liability insurer, Progressive
 Preferred Insurance Company, for $25,000, the limit for
 bodily injury claims under Canchola-Rodriguez's policy.
 Klabon then filed a claim under CMI's commercial auto
 insurance policy, issued by Travelers Property Casualty
 Company of America ("Travelers"). In addition to
 liability coverage, the Travelers policy provided up to $1
 million in UM/UIM coverage.
 
 
          ¶5
 Travelers ultimately valued Klabon's UIM claim at
 $78,766, based in part on its medical expert's finding
 that some of Klabon's injuries predated the accident.
 
 6
 
 Travelers did not pay out the full value it assigned to the
 claim, instead issuing $45,766.68 in total payments for UIM
 benefits to Klabon.
 
 
          ¶6
 Klabon sued Travelers in state court, alleging that Travelers
 unreasonably denied and delayed payment of UIM benefits, and
 that such denial was done in bad faith and in breach of its
 contract. See § 10-3-1115, C.R.S. (2024)
 (forbidding an insurer from unreasonably delaying or denying
 payment of a claim for benefits). He asserted that, by virtue
 of his employment with CMI, he was a "covered
 driver" under CMI's policy and was thus entitled to
 additional UIM benefits. Travelers removed the case to
 federal court.
 
 
          ¶7
 Travelers then moved for summary judgment, asserting for the
 first time that Klabon's receipt of workers'
 compensation benefits barred his suit to recover UIM
 benefits. Citing the WCA's "exclusivity and immunity
 provisions," §§ 8-41-102, -104, C.R.S. (2024),
 Travelers argued that Klabon's acceptance of workers'
 compensation benefits rendered the WCA the exclusive remedy
 for his injuries, and consequently, that Klabon had
 surrendered his right to bring a claim against his
 employer's UIM carrier. Klabon responded that since he
 was injured by the negligence of an underinsured third party,
 rather than by CMI or a co-employee, the WCA's
 exclusivity and immunity provisions posed no impediment to
 his suit against Travelers for UIM benefits.
 
 7
 
          ¶8
 United States Magistrate Judge N. Reid Neureiter heard
 arguments on the motion and raised sua sponte whether the
 issue would be best addressed by this court as a certified
 question of law. Travelers agreed that certification was
 appropriate. Klabon disagreed because, in his view, our
 decision in Aetna Casualty & Surety Co. v.
 McMichael, 906 P.2d 92 (Colo. 1995), resolved the issue.
 There, this court held that an employee's suit to recover
 UM/UIM damages sustained due to the negligence of a third
 party was not barred by a workers' compensation exclusion
 in the underlying policy. Id. at 100. This was
 because the benefits sought were not workers'
 compensation benefits. Rather, they were UM/UIM benefits that
 were substituted for benefits McMichael would have received
 from the motorist who caused his injuries had the motorist
 been sufficiently insured. Id. Klabon argued that
 his lawsuit, like McMichael's, represented a claim
 "based on the liability incurred by the driver who
 caused the accident," rather than a claim against his
 employer. Id.
 
 
          ¶9
 After hearing the parties' arguments, the court observed
 that federal district judges in Colorado have "recently
 been struggling" with the question of whether an
 employee injured in the course of their employment by an
 underinsured third-party tortfeasor and who receives
 workers' compensation benefits can nonetheless
 
 8
 
 recover benefits from their employer's UM/UIM
 carrier.[2] Faced with conflicting precedent
 interpreting and applying the language of the WCA's
 immunity and exclusivity provisions, and recognizing the
 significant public policy implications for Colorado
 workers' compensation beneficiaries and their employers,
 the United States Magistrate Judge certified the question of
 whether an employee injured in the course of their employment
 by the acts of a third-party tortfeasor, and who receives
 benefits under the WCA, is barred from bringing suit against
 their employer's UM/UIM carrier.
 
 
          ¶10
 We accepted review of the certified question. After
 considering the Order Certifying Question to Colorado Supreme
 Court, the parties' briefing before the District Court
 and this court, and the oral arguments of the parties in this
 court, we now proceed to decide that question.[3]
 
 9
 
          II.
 Analysis
 
 
          ¶11
 We begin by setting forth the applicable standard of review
 and our rules of statutory construction. We turn next to
 consider the language of both the WCA and Colorado's
 UM/UIM statute because they are the statutory schemes guiding
 our decision in this case. After that, we address the
 certified question head-on, determining, as an initial
 matter, that section 8-41-102, C.R.S. (2024), rather than
 section 8-41-104 C.R.S., (2024), governs our decision in this
 case and holding that an employee injured in the course of
 their employment by the acts of an uninsured or underinsured
 third-party tortfeasor is not barred from suing their
 employer's UM/UIM carrier for benefits, even when they
 have received workers' compensation benefits as a result
 of that injury. This, we explain, is because the plain
 language of section 8-41-102 immunizes Pinnacol, CMI's
 workers' compensation insurance carrier, not Travelers,
 CMI's UM/UIM carrier. We further conclude that when an
 employee is injured by the negligence of a third party,
 rather than by an employer or a co-employee, a suit to
 recover UM/UIM benefits does not constitute a suit against
 the employer and, therefore, is not barred by the WCA as an
 employee's exclusive remedy.
 
 
          A.
 Standard of Review and Canons of Statutory Construction
 
 
          ¶12
 This court has discretion under C.A.R. 21.1(a) to resolve
 questions of law certified by a federal court. We exercise
 that discretion when a question "may be
 
 10
 
 determinative of the cause then pending in the certifying
 court and as to which it appears to the certifying court that
 there is no controlling precedent in the decisions of the
 supreme court." Skillett v. Allstate Fire & Cas.
 Ins. Co., 2022 CO 12, ¶ 8, 505 P.3d 664, 666
 (quoting C.A.R. 21.1(a)). We review such questions de novo.
 Id. Likewise, we review de novo the issues of
 statutory interpretation. Godinez v. Williams, 2024
 CO 14, ¶ 19, 544 P.3d 1233, 1237.
 
 
          ¶13
 When interpreting statutes, our aim is to effectuate the
 intent of the General Assembly by turning first to the
 statutory text and giving words their plain and ordinary
 meanings. Id. at ¶ 20, 544 P.3d at 1237.
 Additionally, we read a statute "in context and in its
 entirety; giv[ing] 'consistent, harmonious, and sensible
 effect to all of its parts[] and avoid[ing] constructions
 that would render any words or phrases superfluous or lead to
 illogical or absurd results.'" Skillett,
 ¶ 9, 505 P.3d at 666 (quoting Pineda-Liberato v.
 People, 2017 CO 95, ¶ 22, 403 P.3d 160, 164). If
 the statute's language is clear, we look no further.
 Id. Next, we examine the two statutes that guide our
 consideration of the question certified: the WCA and the
 UM/UIM statute.
 
 
          B. The
 WCA
 
 
          ¶14
 The General Assembly enacted the WCA to protect employees who
 sustain work-related injuries. Am. Fam. Mut. Ins. Co. v.
 Ashour, 2017 COA 67, ¶ 66, 410 P.3d 753, 764.
 Specifically, the WCA's purpose is to "assure the
 quick and
 
 11
 
 efficient delivery of disability and medical benefits to
 injured workers . . . without the necessity of any
 litigation." § 8-40-102(1), C.R.S. (2024). To that
 end, the WCA sets forth statutorily mandated coverage that
 certain employers must provide to employees injured on the
 job, including coverage of "medical expenses, lost
 wages, disability benefits, compensation for disfigurement,
 and death and burial benefits." Delta Air Lines,
 Inc. v. Scholle, 2021 CO 20, ¶ 14, 484 P.3d 695,
 699; see also § 8-42-101 to -125, C.R.S.
 (2024).
 
 
          ¶15
 The WCA was designed to be the "exclusive remed[y] for
 employees suffering work-related injuries."
 Horodyskyj v. Karanian, 32 P.3d 470, 474 (Colo.
 2001). Its exclusive remedy provisions, sections 8-41-102 and
 8-41-104, bar an employee from bringing a civil action in
 tort against their employer for injuries that the employee
 sustained while performing services arising during the course
 of their employment. Ryser v. Shelter Mut. Ins. Co.,
 2021 CO 11, ¶ 21, 480 P.3d 1286, 1290. Thus, in exchange
 for an employer securing insurance to cover its
 employees' work-related injuries, Ashour, ¶
 18, 410 P.3d at 757, those employees forego common law
 remedies otherwise available to them. Kandt v.
 Evans, 645 P.2d 1300, 1302 (Colo. 1982); see
 also § 8-40-102(1) (declaring that "the
 workers' compensation system in Colorado is based on a
 mutual renunciation of common law rights and defenses by
 employers and employees alike"). And if an employee is
 injured in the course of their employment by a co-employee,
 under the "co-
 
 12
 
 employee immunity rule," the co-employee is also
 immunized from common law liability. Ryser, ¶
 23, 480 P.3d at 1290.
 
 
          ¶16
 As noted, two provisions of the WCA serve as the Act's
 exclusive remedy provisions: sections 8-41-102 and 8-41-104.
 Section 8-41-102 provides:
 
 
 An employer who has complied with the provisions of articles
 40 to 47 of this title, including the provisions relating to
 insurance, shall not be subject to the provisions of section
 8-41-101[, C.R.S. (2024),] [concerning the unavailability of
 certain defenses]; nor shall such employer or the
 insurance carrier, if any, insuring the employer's
 liability under said articles be subject to any other
 liability for the death of or personal injury to any
 employee, except as provided in said articles; and
 all causes of action, actions at law, suits in equity,
 proceedings, and statutory and common law rights and remedies
 for and on account of such death of or personal injury to any
 such employee and accruing to any person are abolished
 except as provided in said articles.
 
 
 (Emphases added.) Section 8-41-104 provides:
 
 
 An election under the provisions of section 8-40-302(5)[,
 C.R.S. (2024),] and in compliance with the provisions of
 articles 40 to 47 of this title, including the provisions for
 insurance, shall be construed to be a surrender by the
 employer, such employer's insurance carrier, and the
 employee of their rights to any method, form, or amount of
 compensation or determination thereof or to any cause of
 action, action at law, suit in equity, or statutory or
 common-law right, remedy, or proceeding for or on account of
 such personal injuries or death of such employee other than
 as provided in said articles, and shall be an acceptance of
 all the provisions of said articles, and shall bind the
 employee personally, and, for compensation for such
 employee's death, the employee's personal
 representatives, surviving spouse, and next of kin, as well
 as the employer, such employer's insurance carrier, and
 those conducting their business during bankruptcy or
 insolvency.
 
 13
 
          ¶17
 Section 8-41-102 thus immunizes a WCA-compliant employer-and
 its workers' compensation insurance carrier-from suit by
 an employee injured in the course of their employment. §
 8-41-102 (an employer compliant with the provisions of the
 WCA "or the insurance carrier . . .
 insuring the employer's liability under [the
 WCA]" shall not "be subject to any other liability
 for the death of or personal injury to any employee"
 (emphasis added)). It also extinguishes all common law causes
 of action arising from an employee's injury, rendering
 the WCA an employee's exclusive remedy for on-the-job
 injuries. Id. ("[A]ll causes of action . . . on
 account of such death of or personal injury to any such
 employee . . . are abolished . . . .").
 
 
          ¶18
 Section 8-41-104 contains similar limiting language. Under
 that section, "upon participating in the workers'
 compensation system, all employees 'surrender . . . their
 rights to any method, form, or amount of compensation or
 determination thereof or to any cause of action, action at
 law, suit in equity, or statutory or common-law right,
 remedy, or proceeding'" for on-the-job injuries.
 Ryser, ¶ 26, 480 P.3d at 1291 (omission in
 original) (quoting § 8-41-104).
 
 
          ¶19
 While traditionally cited together as the WCA's
 "exclusivity provisions," see, e.g.,
 Ashour, ¶ 17, 410 P.3d at 757, sections
 8-41-102 and -104 apply to different categories of employers.
 Section 8-41-104 is applicable only to employers who are
 statutorily excluded pursuant to section 8-40-302(2) to (4)
 of the WCA from
 
 14
 
 providing workers' compensation to their employees, but
 who nonetheless elect to do so under the provisions of
 section 8-40-302(5).[4]
 
 
          ¶20
 Section 8-41-102, conversely, applies to all employers who
 are statutorily required to provide WCA benefits in the first
 instance. See Ashour, ¶ 13, 410 P.3d at 756
 ("Employers subject to the [WCA] . . . are required to
 secure insurance to cover their employees' claims for
 work-related injury." (citing § 8-44-101(1), C.R.S.
 (2024) ("Any employer subject to the [WCA] shall secure
 compensation for all employees . . . ."))).
 
 
          ¶21
 While sections 8-41-102 and -104 apply to different
 categories of employers, taken together they constitute the
 WCA's "exclusivity provisions," limiting
 injured employees' common law remedies and immunizing
 employers and co-employees from tort claims. Ashour,
 ¶¶ 17-18, 410 P.3d at 757. These provisions do not
 bar injured employees from asserting all tort
 claims. Notably, the WCA expressly permits an employee to
 receive workers' compensation benefits and
 pursue a remedy against a third-party tortfeasor. That is,
 while an employee cannot pursue a remedy for an injury
 against an employer or a co-employee, an employee can pursue
 a remedy when the employee is injured by the negligence of
 
 15
 
 a third party. See § 8-41-203(1)(a),
 C.R.S. (2024) (providing that employees who are "injured
 or killed by the negligence or wrong of another not in the
 same employ" may obtain workers' compensation
 benefits "and may also pursue a remedy against the other
 person to recover any damages in excess of the compensation
 available under [the WCA]").
 
 
          C. The
 UM/UIM Statute
 
 
          ¶22
 The General Assembly enacted the UM/UIM statute for a very
 different purpose. It serves to "protect the public from
 the devastating financial loss that a traffic accident victim
 can incur" and to "provide a mechanism through
 which an insured could purchase insurance coverage against
 loss caused by the negligent conduct of a financially
 irresponsible motorist." McMichael, 906 P.2d at
 98; see also DeHerrera v. Sentry Ins. Co., 30 P.3d
 167, 174 (Colo. 2001) (observing that "the important
 policy behind UM/UIM insurance [is] to protect persons from
 the often-devastating consequences of motor vehicle
 accidents"). The statute provides, in pertinent part:
 
 
 Except as described in subsection (1)(a)(II) of this section,
 an automobile liability or motor vehicle liability policy
 insuring against loss resulting from liability imposed by law
 for bodily injury . . . suffered by any person arising out of
 the ownership, maintenance, or use of a motor vehicle, which
 policy is delivered or issued for delivery in this state with
 respect to any motor vehicle licensed for highway use in this
 state, must provide coverage or supplemental coverage . . .
 for the protection of persons insured under the policy who
 are legally entitled to recover damages from owners or
 operators of uninsured motor vehicles because of bodily
 
 16
 
 injury, sickness, or disease, including death, resulting from
 a motor vehicle accident.
 
 
 § 10-4-609(1)(a)(I), C.R.S. (2024).
 
 
          ¶23
 To effectuate the General Assembly's goal, the statute
 requires auto insurance liability policies to also include
 optional UM/UIM coverage. This coverage, as the name
 suggests, provides benefits when a tortfeasor lacks liability
 insurance or is underinsured. See DeHerrera, 30 P.3d
 at 173. Specifically, a UM/UIM policy "functions as a
 bridge that spans the gap between a tortfeasor's
 insurance liability limits and the amount of damages
 sustained by an insured, up to the amount of the UM/UIM
 coverage purchased." Essentia Ins. Co. v.
 Hughes, 2024 CO 17, ¶ 26, 545 P.3d 494, 500.
 
 
          ¶24
 To be entitled to coverage, an insured must establish that
 they are "legally entitled to recover damages,"
 that is, "that the fault of the uninsured [or
 underinsured] motorist gave rise to damages and the extent of
 those damages." Borjas v. State Farm Mut. Auto. Ins.
 Co., 33 P.3d 1265, 1269 (Colo.App. 2001). Additionally,
 an employee is not "legally entitled to recover"
 UM/UIM benefits from an employer or a co-employee under the
 WCA. Ryser, ¶ 36, 480 P.3d at 1293-94 (holding
 that the WCA's exclusivity and co-employee immunity
 principles bar an employee from bringing a UM/UIM benefits
 claim against an employer or co-employee).
 
 17
 
          ¶25
 With the WCA and the UM/UIM statute in mind, we turn now to
 their application in this case.
 
 
          D.
 An Employer's UM/UIM Carrier Is Not an Immunized Insurer
 Under Section 8-41-102
 
 
          ¶26
 Section 8-41-102 governs our initial consideration of this
 case because it covers all employers statutorily required to
 provide workers' compensation insurance under the WCA.
 See § 8-44-101(1) (requiring subject employers
 to secure workers' compensation coverage for their
 employees). Here, there is no dispute that CMI falls within
 the scope of section 8-41-102. Thus, we look to that section,
 rather than to section 8-41-104, to determine whether its
 immunity and exclusivity language bars Klabon's suit to
 recover UM/UIM benefits.
 
 
          ¶27
 Recall that, under the immunizing language in section
 8-41-102, neither the "employer or the insurance
 carrier, if any, insuring the employer's liability under
 said articles" shall "be subject to any other
 liability for the death of or personal injury to any
 employee." The phrase "under said articles" as
 used in this section refers to "articles 40 to 47"
 of the WCA. § 8-41-102 (governing "employer[s] who
 ha[ve] complied with the provisions of articles 40 to 47 of
 this title"). Thus, in this case, the carrier
 "insuring the employer's liability" under the
 WCA is Pinnacol, CMI's workers' compensation
 insurance carrier-not Travelers, CMI's separate auto
 liability insurance carrier. See Ashour,
 ¶¶ 14-15, 410 P.3d at 756-57 (quoting
 
 18
 
 sections 8-41-102 and -104 and concluding that the employer
 "and its workers' compensation insurance carrier are
 immune from suit").
 
 
          ¶28
 Further, reading section 8-41-102 to immunize an insurance
 carrier that does not insure the employer's workers'
 compensation liability would conflict with the plain language
 of the statute and undermine the basis of immunity provided
 by the WCA, which is built upon an exchange between an
 employee and employer. Id. at ¶ 18, 410 P.3d at
 757 ("[T]he workers' compensation system is an
 agreement by employers to provide benefits to employees,
 regardless of fault, and in exchange for assuming that
 burden, the employer is immunized from tort claims for
 injuries to its employees."); see also Froid v.
 Knowles, 36 P.2d 156, 158 (Colo. 1934) ("An
 outsider does not share the burdens of the [WCA] imposed upon
 the employer, and he is entitled to none of its
 benefits." (quoting Hotel Equip. Co. v.
 Liddell, 124 S.E. 92, 94-95 (Ga.Ct.App. 1924)));
 Frohlick Crane Serv., Inc. v. Mack, 510 P.2d 891,
 893 (Colo. 1973) ("The employer is immunized from claims
 for tortious injuries only because he assumes the burden of
 compensating a workman for all job-related injuries.").
 
 
          ¶29
 Unlike Pinnacol, Travelers does not bear the burden of
 providing workers' compensation benefits or of ensuring
 its compliance with any of the WCA's insurance
 requirements. See § 8-44-101(1) (describing,
 for employers subject to the WCA, what constitutes
 "compliance with the [WCA's] insurance
 requirements");
 
 19
 
 see also § 8-44-102(1), C.R.S. (2024)
 ("Every contract for the insurance of compensation and
 benefits . . . is subject to articles 40 to 47 of this title,
 and all provisions in the contract for insurance inconsistent
 with those articles are void."). Consequently, section
 8-41-102 does not immunize Travelers from liability.
 
 
          E. A
 Suit to Recover UM/UIM Benefits for a Third Party's
 Negligence Does Not Constitute a Suit Against an Employer or
 a Co-Employee
 
 
          ¶30
 Our inquiry does not, however, stop there. Although we have
 determined that Travelers is not shielded by section
 8-41-102's immunity clause, we are still left with the
 question of whether Klabon's suit to recover UM/UIM
 benefits is nonetheless precluded by the section's
 exclusivity clause. See § 8-41-102 ("[A]ll
 causes of action, actions at law, suits in equity,
 proceedings, and statutory and common law rights and remedies
 for and on account of such death of or personal injury to any
 such employee and accruing to any person are abolished except
 as provided in said articles."); Kandt, 645
 P.2d at 1302 (observing that, under section 8-41-102,
 "[r]ecovery under the [WCA] is meant to be exclusive and
 to preclude employee tort actions against an employer").
 
 
          ¶31
 Travelers urges us to answer this question "yes."
 It asserts that allowing an employee to recover benefits from
 an employer's UM/UIM carrier would ignore the WCA's
 purpose as an employee's exclusive remedy and allow
 duplicate claims for recovery. We are unpersuaded.
 
 20
 
          ¶32
 Recall that when an employee is injured in the course of
 their employment by a third-party tortfeasor, the WCA's
 exclusivity provisions do not foreclose the employee's
 recovery from that third party. Rather, the WCA expressly
 permits an injured employee to recover both workers'
 compensation benefits and to sue the third-party
 tortfeasor for damages. § 8-41-203(1)(a). When the
 third-party tortfeasor is uninsured or underinsured, a suit
 to recover UM/UIM benefits-even from an employer's UM/UIM
 carrier-is not a suit against the employer or a co-employee,
 and, accordingly, does not implicate, let alone violate, the
 WCA's exclusivity rule.
 
 
          ¶33
 We said as much in McMichael. 906 P.2d at 100. In
 that case, McMichael was working on a highway near his parked
 company-owned truck when he was struck and seriously injured
 by another driver. Id. at 94. The driver who hit
 McMichael had inadequate auto insurance to compensate him for
 his injuries, so McMichael filed an underinsured motorist
 claim with Aetna, his employer's auto insurance carrier.
 Id. Aetna argued that McMichael's UM/UIM claim
 was precluded by an exclusion in the policy for "[a]ny
 obligation for which the 'insured' or the
 'insured's' insurer may be held liable under any
 workers' compensation . . . law." Id. at
 99-100. We rejected Aetna's claim, explaining that the
 WCA "does not bar McMichael from bringing a tort action
 against the driver who caused the accident,"
 id. at 100 n.7 (citing § 8-41-203), and that
 the UM/UIM benefits
 
 21
 
 McMichael sought through his suit against Aetna
 "substitute for benefits that [he] would have received
 from the motorist who caused his injuries," id.
 at 100. Indeed, we emphasized that the UM/UIM benefits
 "do not constitute workers' compensation benefits
 and do not result because of a suit brought by McMichael
 against" his employer. Id.
 
 
          ¶34
 The principle we set forth in McMichael, which we
 reiterate today, is that an employee's suit to recover
 UM/UIM benefits predicated on the liability of an uninsured
 or underinsured third party is not an action prohibited by
 the exclusivity clause of section 8-41-102.
 
 
          ¶35
 We drew this distinction in Ryser as well. There, an
 employee injured by his co-employee's negligence
 recovered workers' compensation benefits and also sought
 to recover UM/UIM benefits from his co-employee's auto
 insurer. Ryser, ¶¶ 4-7, 480 P.3d at
 1287-88. We held that the WCA's co-employee immunity rule
 barred the employee's suit to recover UM/UIM benefits,
 explaining that the WCA's immunity for co-employees
 extends to a co-employee's insurance carrier.
 Id. at ¶ 29, 480 P.3d at 1291. In so holding,
 we explicitly distinguished McMichael on the basis
 that it dealt with an employee injured by a third party:
 "Because the plaintiff in McMichael was injured
 by the negligence of an unrelated tortfeasor (i.e., a
 tortfeasor who was not a co-employee), we had no occasion to
 consider either
 
 22
 
 the WCA, its exclusivity or co-employee immunity principles,
 or the interplay between the UM/UIM statute and the
 WCA." Id. at ¶ 34, 480 P.3d at 1292.
 
 
          ¶36
 Here, in contrast, Klabon was injured in the course of his
 employment, not by CMI or by a co-employee, but rather by
 Canchola-Rodriguez, a third-party tortfeasor. By contracting
 to provide CMI-and, by virtue of his employment, Klabon-with
 UM/UIM benefits, Travelers agreed to assume liability for
 injuries caused by an uninsured or underinsured driver. And
 because Klabon's UIM claim arises from a third-party
 tortfeasor's liability, it does not violate the
 exclusivity principle as set forth in section 8-41-102.
 See Ward v. Acuity, No. 22-1117, 2023 WL 4117502, at
 *6 (10th Cir. June 22, 2023) (rejecting the UM/UIM
 carrier's argument that an employee who sues to recover
 benefits under their employer's UM/UIM policy for
 injuries caused by a third party would violate section
 8-41-102, observing that the argument "mistakenly
 assumes that any impact on an employer constitutes a
 liability"); Colo. Ins. Guar. Ass'n v.
 Menor, 166 P.3d 205, 213 (Colo.App. 2007) (observing
 that "[t]he liability of a UM/UIM insurer to the injured
 party is contractual" and concluding that an employee
 injured by a third-party tortfeasor "was entitled to
 recover benefits under both workers' compensation and the
 [employer's] UM/UIM policy").
 
 
          ¶37
 This reading is consistent with the legislative intent behind
 the UM/UIM statute, which was enacted to put victims in the
 same position as if the driver who
 
 23
 
 injured them was adequately insured in the first place.
 DeHerrera, 30 P.3d at 174 ("UM/UIM coverage
 replaces the benefits an innocent injured insured would have
 recovered . . . if the tortfeasor had been [adequately]
 insured for liability coverage . . . ."). It also aligns
 with the well-established public policy of "preventing
 the dilution of UM[/UIM] coverage," including by, for
 example, prohibiting UM/UIM carriers from reducing their
 liability by the amount of any workers' compensation
 award. State Farm Mut. Auto. Ins. Co. v. Brekke, 105
 P.3d 177, 184 (Colo. 2004); see also §
 10-4-609(1)(c) ("The amount of the coverage available .
 . . shall not be reduced by a setoff from any other coverage,
 including, but not limited to, legal liability insurance,
 medical payments coverage, health insurance, or other
 uninsured or underinsured motor vehicle insurance.");
 see also Nationwide Mut. Ins. Co. v. Hillyer, 509
 P.2d 810, 811 (Colo.App. 1973) (voiding an insurance policy
 provision that reduced UM/UIM benefits by the amount of the
 employee's workers' compensation award).
 
 
          ¶38
 Travelers argues that this construction of the WCA,
 permitting employees to recover both workers'
 compensation and UM/UIM benefits from employers, allows
 "duplicative claims and . . . erodes the [WCA's]
 system of compensation." But this policy argument
 ignores the fact that the WCA and the UM/UIM statute serve
 different purposes and offer different benefits. The intent
 of the WCA is to assure the quick and efficient delivery of
 disability and medical benefits to
 
 24
 
 employees injured in the course of employment, at a
 reasonable cost to employers, without the need for
 litigation. See § 8-40-102(1). But its benefits
 are not all-encompassing. The WCA compensates only an
 employee's economic damages, such as medical expenses and
 lost wages; it does not provide compensation for noneconomic
 damages, such as pain and suffering. Reliance Ins. Co. v.
 Blackford, 100 P.3d 578, 580 (Colo.App. 2004).
 
 
          ¶39
 The UM/UIM statute, conversely, requires a claimant to first
 establish "that the uninsured motorist's fault,
 normally negligence, caused the collision," and
 compensates an insured only up to policy limits. Newton
 v. Nationwide Mut. Fire Ins. Co., 594 P.2d 1042, 1043-44
 (Colo. 1979). While the benefits received under these
 separate types of coverage may overlap, they are not
 co-extensive. See Calderon v. Am. Fam. Mut. Ins.
 Co., 2016 CO 72, ¶ 13, 383 P.3d 676, 679 (observing
 a similar distinction between UM/UIM coverage and MedPay
 coverage and noting that "benefits received under
 separate coverages can substantially overlap without
 constituting a double recovery").
 
 
          ¶40
 And, in any event, the possibility of overlapping benefits
 does not allow us to disregard the General Assembly's
 intent in passing these statutes. Travelers's policy
 argument is best left to the legislature.
 
 25
 
          III.
 Conclusion
 
 
          ¶41
 For these reasons, we answer the certified question by
 concluding that an employee who is injured in the course of
 their employment by the acts of an uninsured or underinsured
 third-party tortfeasor, and who receives workers'
 compensation benefits because of that injury, is not barred
 under section 8-41-102 from also bringing a suit to recover
 damages against their employer's UM/UIM insurance
 carrier.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We derive the following facts from
 Klabon's complaint and the district court's
 certification order.
 
 
 [2] Compare Ward v. Acuity, 591
 F.Supp.3d 1003, 1008 (D. Colo. 2022) (holding that the
 WCA's exclusivity provisions barred a plaintiff injured
 by a third-party tortfeasor from recovering benefits under
 the employer's UM/UIM policy), vacated, No.
 22-1117, 2023 WL 4117502, at *7 (10th Cir. June 22, 2023),
 with Laurienti v. Am. Alt. Ins. Corp., No.
 19-cv-01725-DDD-KLM, 2020 WL 9424250, at *2 (D. Colo. Jan. 3,
 2020) (holding that the WCA's immunity provision did not
 bar an employee injured by a third-party tortfeasor from
 recovering benefits under his employer's UM/UIM
 policy).
 
 
 [3] After oral argument, we requested and
 received supplemental briefing from the parties on the issue
 of the applicability of section 8-41-104, C.R.S. (2024), to
 this case.
 
 
 [4] Exempt employers under section
 8-40-302 include employers of specifically identified
 categories of employees, like farm and ranch workers and
 employees of religious employers, who receive limited wages
 or who work less than full-time hours. §
 8-40-302(2)-(4).
 
 
 ---------